### UNITED STATES ex rel. TENNESSEE VALLEY AUTHORITY v. PURYEAR et al.

#### Nos. 585–587.

United States District Court
W. D. Kentucky, at Paducah.

April 29, 1952.

John C. Lovett, Benton, Ky., Joseph C. Swidler, Gen. Counsel, Knoxville, Tenn., for plaintiff.

James G. Wheeler, Paducah, for Jane Goodman Sullivan.

Earle T. Shoup, Paducah, for Jewel C. Puryear and Benjamin F. Bean.

MARTIN, Circuit Judge (sitting by designation).

By consent of counsel, the motions in these three cases, presenting identical issues, have been heard and considered on the oral arguments and briefs of the contending attorneys for both sides and on the records in the causes. Each of the three actions, brought by the Tennessee Valley

Authority, seeks to condemn an easement and right-of-way for the use of the T. V. A., in constructing and maintaining an electric power transmission line on lands in which the defendants are alleged to have an interest.

Authority for the taking is vested by the Tennessee Valley Authority Act of 1933, 48 Stat. 58, as amended, 16 U.S.C.A. § 831, et seq. The declarations of taking and orders of possession in each of the three cases were filed in September 1951, and separate answers and motions to dismiss were filed by the defendants in October of the same year. The motions to dismiss challenged the authority for the proceeding under the T. V. A. Act and raised the proposition that the defendants are entitled to a trial by jury under Rule 71A(h), 28 U.S.C.A. it being contended that section 831(x) of Title 16, U.S.C.A. is not applicable.

About two weeks after the motions to dismiss were filed, the defendants filed motions praying that the court set aside and vacate its orders authorizing the Tennessee Valley Authority to take possession of the lands described and, in support thereof, cited 40 U.S.C.A. § 258a, to the effect that the entry of orders of possession depends upon the applicability and validity of legislation authorizing the exercise of the power of eminent domain. These motions asserted that the statutes relied upon by T. V. A. are inapplicable, and prayed suspension of the orders of taking pending final disposition of the questions raised in their answers and on their motions to dismiss. The Tennessee Valley Authority moved to strike the demands for jury trials.

■ The first question to be considered is whether the Tennessee Valley Authority Act contains authority for the condemnation of the easements and rights-of-way in issue. It would seem clear from an analysis of the statute that it does. It appears that the purpose of these actions is to acquire easements and rights-of-way for a portion of a transmission line to run, when completed, from Kentucky Dam to Shawnee Steamplant. It would seem that numerous sections of the Tennessee Valley Authority Act, considered together, make it clear beyond cavil that T. V. A. has the essential authority to acquire the easements and rights-of-way in question. See sections 4(f), (g), (i), (j); section 10, section 11, section 12, section 12a, section 14, section 15, section 22, section 25, and section 31.

Section 12 of the Act, 48 Stat. 58, 1933, as amended, Title 16, § 831, et seq., expressly authorizes the construction of transmission lines "within transmission distance from the place where generated," and to interconnect with other systems. There is undoubtedly statutory authority in the T. V. A. Act, granted in section 4, for the construction of the Shawnee Steamplant. The mere reading of the statute is convincing as to this. See also section 14 and 15 of the Act.

The defendants insist that section 4, especially in paragraph (i) and paragraph (j), limits construction of steamplants to points along the Tennessee River, or its tributaries. They point to the punctuation of these paragraphs to buttress their argument. It is true that, for flood control and navigation purposes, the authority of T. V. A. was limited to the Tennessee Valley, and dams and reservoirs are, by the terms of the Act, to be constructed only in the Tennessee River and its tributaries; but, with respect to marketing power produced at such projects, Congress authorized the Tennessee Valley Authority to sell power in a territory within transmission distance of the dam, and to construct necessary transmission lines for such purpose.

Section 12 of the Act provides, as follows: "In order to place the board upon a fair basis for making such contracts and for receiving bids for the sale of such power, it is hereby expressly authorized, either from appropriations made by Congress or from funds secured from the sale of such power, or from funds secured by the sale of bonds hereafter provided for, to construct, lease, purchase, or authorize the construction of transmission lines within transmission distance from the place where generated, and to interconnect with other systems." Section 11 provided for the declared policy that, so far as practical, surplus power generated at Muscle Shoals should be distributed and sold equitably

among the States, counties and municipalities "within transmission distance". Section 12a again provided for the disposition of surplus power to states, counties, municipalities, and nonprofit organizations "situated within transmission distance from any dam where such power is generated * * *." Section 31 of the Act, being the last section thereof, expressly directs that the Act be liberally construed to carry out the purposes of Congress to provide for the disposition of, and the making of needful rules and regulations concerning, Government properties entrusted to the Tennessee Valley Authority; and to provide for the national defense, improve navigation, control destructive floods and promote interstate commerce and the general welfare.

This required liberal interpretation was expressed and applied in United States, ex rel. Tennessee Valley Authority v. Welch, 327 U.S. 546, 66 S.Ct. 715, 718, 90 L.Ed. 843. Writing the majority opinion, Mr. Justice Black, after reviewing the pertinent sections of the T. V. A. Act, said that to make clear beyond any doubt the broad power of T. V. A., the Congress, in section 25 of the Act, authorized the T. V. A. to file proceedings such as the one then before the Supreme Court and under present consideration " 'for the acquisition by condemnation of any lands, easements, or rights of way which, in the opinion of the Corporation, are necessary to carry out the provisions of this Act.' " The opinion writer said further: "All of these provisions show a clear Congressional purpose to grant the Authority all the power needed to acquire lands by purchase or by condemnation which it deems necessary for carrying out the Act's purposes."

Of remote authoritative value, relating to other Acts of Congress liberally construed to effectuate a taking of private property for public use, see United States v. Gettysburg Electric R. Co., 160 U.S. 668, 16 S.Ct. 427, 40 L.Ed. 576; Rindge Company v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186. The Court of Appeals for the Sixth Circuit has construed the powers vested in the board of directors of the Tennessee Valley Authority as constituting a wide range of discretion in matters appropriate to the Act. See Tennessee Valley Authority v. Kinzer, 6 Cir., 142 F.2d 833.

In view of the foregoing conclusion, it is obvious that the defendants are not entitled to jury trials to determine the just compensation to which each is entitled, for the Tennessee Valley Authority Act provides for procedure before a commission with review by three district judges for the determination of just compensation. Section 4(i) of the T. V. A. Act declares that all condemnations by the Tennessee Valley Authority shall be had pursuant to the later specified provisions and requirements of the Act, which are found in section 25. No constitutional right to trial by jury inheres in condemnation cases. Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, certiorari denied 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030.

The defendants are not entitled to a more definite statement than is found in the complaint, which conforms to Rule 84 of the Federal Rules of Civil Procedure. While the ingenious arguments of attorneys for the defendants have not been stated in detail, all have been given careful consideration, with the conclusion reached that none rests on valid grounds. It has been concluded that the Tennessee Valley Authority has power to construct transmission lines outside the Tennessee Valley, by virtue of the provisions in the T. V. A. Act; that T. V. A. has authority, by statute, to construction transmission lines connecting the Shawnee Plant and the Kentucky Dam; that the Authority has authority, by statute, to sell power to the Atomic Energy Commission (legislative history having made this plain); that the defendants may not lawfully question the statutory authority of T. V. A., to sell power to A. E. C.; and that the condemnation of easement which T. V. A. considers necessary for the construction of transmission lines is authorized by express provisions of the Act, as has been heretofore shown. See United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843, supra.

The respective motions of defendants **are** denied.