**RAINBOW REALTY COMPANY,**
Plaintiff,

v.

**TENNESSEE VALLEY AUTHORITY,**
Defendant.

Civ. No. 1851.

United States District Court
M. D. Tennessee, Nashville Division.
Aug. 2, 1954.

William Waller, D. L. Lansden, Nashville, Tenn., Osborn & Johnson, and Waller, Davis & Lansden, Nashville, Tenn., on the brief, for plaintiff.

Joseph C. Swidler, Gen. Counsel, TVA, Knoxville, Tenn., Thomas A. Pedersen, Asst. Gen. Counsel, TVA, Knoxville, Tenn., Charles J. McCarthy, Solicitor, TVA, Knoxville, Tenn., Robert H. Marquis, Asst. Gen. Counsel, TVA, Knoxville, Tenn., on the brief for defendant.

Before MARTIN, Circuit Judge, and DARR and DAVIES, District Judges.

## PER CURIAM.

In Cause No. 1874, the United States, upon relation of and for the use of the Tennessee Valley Authority, filed on May 24, 1954, a petition for taking, by right of eminent domain, certain described lands in Davidson County, Tennessee, owned in fee simple by the Rainbow Realty Company, a corporation. The purpose of the pleading was to condemn an easement and right-of-way for the use of T. V. A. in constructing and maintaining electric power transmission lines. The authority for the taking was declared to be found in the Tennessee Valley Authority Act of 1933, 48 Stat. 58, as amended, 16 U.S.C.A. § 831 et seq. (1946).

On the following day, the United States District Judge, pursuant to appropriate authority vested in the Court, signed an order directing that the Tennessee Valley Authority, as agent of the United States, be put into immediate possession of the property sought to be condemned, to the extent necessary to permit the T. V. A. to carry out its proposed operations. This order was set aside on June 2, 1954, on motion of the Rainbow Realty Company, on the ground that the order had been entered without notice to the realty company and prior to its filing of an answer challenging the legal right of T. V. A. to condemn the land described.

On June 14, 1954, the plaintiff filed a motion to reinstate the order of possession and, simultaneously, filed objections to certain interrogatories propounded by the defendant land owner. Supporting affidavits were filed by the Government. At the same time, the plaintiff also filed motions to strike portions of the answer; and, on July 1, 1954, filed objection to supplemental interrogatories propounded by the defendant Rainbow Realty Company.

On April 22, 1954, Rainbow Realty Company had filed in this court a complaint in this action, No. 1851, entitled Rainbow Realty Co. v. Tennessee Valley Authority, wherein declaratory judgment and injunctive relief were sought against the institution of condemnation proceedings to take any part of the land of the plaintiff for the proposed transmission lines. The land owner's complaint prayed for a permanent injunction but did not contain a prayer for a temporary injunction or restraining order, nor did plaintiff otherwise apply for such relief.

In Cause No. 1874 (the condemnation proceeding), Rainbow Realty Company, in its answer, raised essentially the same issues of lack of constitutional or statutory authority for the taking, for the use of T. V. A., of its land as it presents in the instant case.

Inasmuch as the Rainbow Realty Company, in this case (No. 1851), seeks an injunction against condemnation proceedings for the taking of any of its land for the proposed transmission lines upon the ground—among others—that if the Tennessee Valley Authority is authorized by law to take by eminent domain any of its land for the proposed transmission lines the law under which it acts is unconstitutional and void to the extent that such taking is authorized, the district judge for the Middle District of Tennessee properly caused to be constituted a three-judge court, as required by law; and such court has assembled and has heard attorneys for the respective parties argue the case orally and has considered both the original and the supplemental briefs and the pleadings and record in the cause.

The T. V. A. filed a motion to dismiss the original complaint; and, on June 28, 1954, Rainbow Realty Company filed an amended complaint. On July 1, 1954, the Tennessee Valley Authority filed a motion to dismiss the amended complaint and a motion to strike material portions of it. On the same date, it also filed objections to supplemental interrogatories served upon it by the plaintiff, Rainbow Realty Company.

It appears from the complaint that the land to be taken by eminent domain is to be used for the purpose of constructing transmission lines for carrying electric power to Nashville, defendant T. V. A. having for many years transmitted electric power to Nashville Electric Service (a public corporation organized and existing under the laws of Tennessee). This public corporation has distributed power so received to residents of Nashville and its suburbs. Boiled down, the main complaint of the plaintiff realty company is that the power system of T. V. A., which was in the beginning predominantly hydro-electric, is being converted through construction of many steam-generating plants to a predominantly "steam-power" system; and that T. V. A. lacks statutory or constitutional authority for the construction and operation of such a system, or for the construction of transmission lines for marketing the output of such system.

The Rainbow Realty Company contends further that the construction of transmission lines across its property would be violative of zoning restrictions set up by the Davidson County Court pursuant to Chapter 473 of the Private Acts of Tennessee, 1939, as amended. The company adds the contention that it has no adequate remedy in the condemnation proceeding, for the reason that title and the right to possession may pass to the condemnor "with no right of appeal prior to final judgment as to the amount of compensation to which the land owner would be entitled if the taking were lawful."

As more elaborately stated by the Rainbow Realty Company in its brief, the T. V. A. was not granted authority "to go into the power business as such or to generate power by steam merely because T. V. A. might have insufficient hydro power to supply the entire requirements of the territory which T. V. A. appropriated, including the requirements of industrial customers."

Rainbow says that "if the Tennessee Valley Authority Act, as amended, be construed to authorize T. V. A. to go into the power business as such, and to generate steam power (other than as incidental to the production and sale of hydro power) said Act is unconstitutional and void." Further contention is made that "when T. V. A.'s generating capacity became insufficient to enable T. V. A. to supply all the requirements of the territory in which it was operating with surplus hydro power, the solution was (and is) for T. V. A. to cut off customers other than preference customers and if this did not solve the problem, to withdraw into a territory which it can legally and adequately serve." We deem it unnecessary to state other points made by plaintiff, for the reason that they would seem to be merely expansions of arguments which have been summarized.

We think that the major contentions of the Rainbow Realty Company have long been rejected by the highest court. We therefore deem it unnecessary to go into an elaborate restatement of settled law, but consider it sufficient to cite the Supreme Court decisions—with occasional quotation therefrom—which demonstrate the broad powers that have been vested in the Tennessee Valley Authority by Acts of Congress. In our judgment, these authorities, considered together, reject every argument adduced by plaintiff in the instant controversy.

As is well known, T. V. A. was created in 1933, 48 Stat. 58, 16 U.S.C.A. § 831 et seq. The broad powers vested in the Tennessee Valley Authority by the Act were pointed out by the Supreme Court in United States ex rel. Tennessee Valley Authority, v. Welch, 327 U.S. 546, 551, 553, 554, 66 S.Ct. 715, 717, 718, 90 L.Ed. 843. There, the Supreme Court as-

serted that the common law rule requiring a strict construction of powers to condemn was not applicable because of the specific provision contained in section 31 that the Act shall be " 'liberally construed to carry out the purposes of Congress to provide * * * for the national defense, improve navigation, control destructive floods and promote interstate commerce and the general welfare.' " It was held further that, in construing the Act, the court should not break one inseparable transaction into separate units but should view the entire transaction as a single integrated effort on the part of T. V. A. to perform its functions. The Supreme Court said: "The broad responsibilities placed on the Authority relate to navigability, flood control, reforestration, marginal lands, and agricultural and industrial development of the whole Tennessee Valley. The T. V. A. was empowered to make contracts, purchase and sell property deemed necessary or convenient in the transaction of its business, and to build dams, reservoirs, transmission lines, power houses and other structures. * * * To discharge its responsibilities the T. V. A. was granted 'such powers as may be necessary or appropriate' for their exercise. Section 4(h) of the Act gives the T. V. A. the very broad power to 'exercise the right of eminent domain.' Section 4(i) of the Act empowers the Authority to condemn certain specified types of property and concludes by referring to 'all property that it [the Authority] deems necessary for carrying out the purposes of this Act * * *.' To make clear beyond any doubt the T. V. A.'s broad power, Congress in section 25 authorized the Authority to file proceedings, such as the ones before us, 'for the acquisition by condemnation of any lands, easements, or rights of way which, in the opinion of the Corporation, are necessary to carry out the provisions of this Act.' All these provisions show a clear Congressional purpose to grant the Authority all the power needed to acquire lands by purchase or by condemnation which it deems necessary for carrying out the Act's purpose."

As was stated in United States ex rel. Tennessee Valley Authority, v. Puryear, 105 F.Supp. 534, 535, by the writer of this per curiam when sitting by designation in the United States District Court for the Western District of Kentucky: "It appears that the purpose of these actions is to acquire easements and rights-of-way for a portion of a transmission line to run, when completed, from Kentucky Dam to Shawnee Steamplant. It would seem that numerous sections of the Tennessee Valley Authority Act, considered together, make it clear beyond cavil that T. V. A. has the essential authority to acquire the easements and rights-of-way in question. See sections 4(f), (g), (i), (j); section 10, section 11, section 12, section 12a, section 14, section 15, section 22, section 25, and section 31. Section 12 of the Act, 48 Stat. 58, 1933, as amended, Title 16, § 831, et seq., expressly authorizes the construction of transmission lines 'within transmission distance from the place where generated,' and to interconnect with other systems. There is undoubtedly statutory authority in the T. V. A. Act, granted in section 4, for the construction of the Shawnee Steamplant. The mere reading of the statute is convincing as to this. See also sections 14 and 15 of the Act." The Welch case, 327 U.S. 546, 66 S.Ct. 715, supra, was cited as authority; and it was asserted by the writer that the condemnation of easements which T. V. A. considered necessary for the construction of transmission lines is authorized by the express provisions of the Act cited in the opinion. The same conclusion is drawn in the circumstances of the case at bar.

Appropriation Acts of Congress have provided funds for eight major steam plants now constructed or in process of construction by T. V. A.: 54 Stat. 781, covering Watts Bar Steamplant; 63 Stat. 76, 80, covering Johnsonville; 64 Stat. 37–38, covering Widows Creek; 64 Stat. 1223, 1229, covering Kingston and Shawnee Steamplants; 65 Stat. 268, 280, covering Colbert; and 66 Stat. 637, 645, covering the Gallatin and John Sevier Steamplants. These repeated con-

gressional appropriations indicate clearly the interpretation by Congress of the T. V. A. Act to authorize construction of steamplants. Reasoning by analogy this principle would seem to have been recognized by the United States Court of Appeals of this circuit in Tennessee Valley Authority v. Kinzer, 6 Cir., 142 F.2d 833, 837.

█ There can now be no doubt that there is plainly both constitutional and statutory authority for the acquisition by T. V. A., by eminent domain, of easements and rights-of-way for the erection of transmission lines to carry hydro-electric power. As has been shown, the Congress has lawfully appropriated money for the construction of "standby" or "firming-up" steam plants as auxiliary to hydro-electric T. V. A. plants. Transmission lines serving Nashville, Tennessee, which will include the line to be erected across the property of the Rainbow Realty Company, are part of a single integrated system of transmission connecting all the hydroelectric power plants of T. V. A. together with its steam plants and points of intersection with other utility systems. All these lines, including those over the property of plaintiff, will transmit some hydro-electric energy. We think it clear under principles enunciated in a connected series of Supreme Court opinions that the construction of these transmission lines cannot be held unconstitutional merely because such lines carry steam-generated electricity in addition to hydro-electric power. Nor is the relative percentage of the source of the power a relevant issue necessary to be determined by this court to reach decision.

At this late date, we find no occasion to restate long understood principles derived from the following cited opinions of the Supreme Court of the United States which reject many arguments of the plaintiff in the case at bar. For decisions directly upholding the constitutionality of the Tennessee Valley Authority Act, see Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543,

affirming judgment of a three-judge court (Allen, Circuit Judge; Gore and Martin, District Judges) reported in D.C.E.D.Tenn., 21 F.Supp. 947. See also Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688. Compare Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487; United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243. These cases establish the proposition that the *interstate commerce clause* of the Federal Constitution, Article I, § 8, clause 3, authorizes the development of integrated watershed programs. It, therefore, seems unnecessary in this case to advert to the effect of the war powers under the Constitution, the property clause, or the general welfare clause.

As previously indicated, the transmission line sought to be constructed across plaintiff's property by right of eminent domain will aid in the supplying by T. V. A. of electric current to the City of Nashville. Congress, in 1939, gave express sanction to the arrangement between the Tennessee Valley Authority and Nashville. An elaborate network of transmission lines and related facilities have been acquired or constructed to serve Nashville, which city, relying upon the availability of the T. V. A. service, has invested substantially in equipment and distribution lines to receive power from the T. V. A. system. Inasmuch as the undertaking of the Tennessee Valley Authority to serve Nashville in this respect is a valid undertaking, such transmission facilities may be set up or acquired by T. V. A. as may be needed to effectuate the arrangement, irrespective of whether the source of supply is exclusively water power, or water power and steamplant power from an integrated system. This rests upon the long established doctrine of McCulloch v. Maryland, 4 Wheat. 316, 421, 4 L.Ed. 579: "Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the let-

ter and spirit of the constitution, are constitutional."

While it is true that we have presented to us a justiciable controversy, the extent to which electric power from steamplants commingled with power from hydro-electric plants may be supplied by T. V. A. is a question for legislative determination and not for determination by the courts.

We are of opinion that Chapter 473 of the Private Acts of Tennessee for 1939, authorizing the Davidson County Court to establish zoning regulations, is ineffective to limit the exercise of the right of eminent domain by the federal government or any of its constituted agencies, such as the Tennessee Valley Authority, which have been vested lawfully with the power of eminent domain. Nearly seventy-nine years ago, the Supreme Court of the United States declared that if the United States has the power to condemn private property for public use, such power is complete in itself; that it can be neither enlarged nor diminished by a State; that no State may prescribe the manner in which the power must be exercised; nor can the consent of a State ever be a condition precedent to the enjoyment by the United States of its right to condemn. Kohl v. United States, 91 U.S. 367, 374, 23 L.Ed. 449. See also United States v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209; Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487. Numerous other cases to the same effect could be cited.

For the foregoing reasons, we think the plaintiff is entitled to no injunctive or other relief. Therefore, the motion of the defendant, Tennessee Valley Authority, to dismiss the amended complaint is granted. This ruling makes it unnecessary for rulings to be made upon the motion to strike certain portions of the complaint, or upon the objections of T. V. A. to the supplemental interrogatories served upon it by the plaintiff.