**UNITED STATES of America upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY, Plaintiff-Appellee,**

v.

**TWO TRACTS OF LAND, John D. Egerton, et al., Defendants-Appellants.**

Nos. 71–1419, 71–1462, 71–1410 and 71–1463.

United States Court of Appeals, Sixth Circuit.

Feb. 23, 1972.

J. Granville Clark, on brief, Russell-ville, Ky., for appellants.

Thomas A. Pedersen, Knoxville, Tenn., for appellee; Robert H. Marquis, Gen. Counsel, Beauchamp E. Brogan, Asst. Gen. Counsel, Justin M. Schwamm, Atty., T. V. A., Knoxville, Tenn., on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and ROTH, District Judge.*

PHILLIPS, Chief Judge.

These consolidated appeals present the question of the right of the Tennessee Valley Authority to acquire land by eminent domain for the Land Between the Lakes Project in Kentucky and Tennessee. The amount of compensation for the taking of the properties was stipulated. The only question in the District Court and on this appeal is the right of the TVA to take.

The landowners contend that there is no public necessity or reason for taking their lands; that there is no constitutional or statutory authority for the taking; that the TVA is acting arbitrarily, capriciously and in bad faith; that the

land sought to be condemned is in excess of the requirements for the project; that the intended use of the land is "extravagent" and "abusive;" and that the purposes, appropriation and use of the land is violative of the Constitution and laws of the United States.

In *Davis*, No. 71–1462, District Judge Henry L. Brooks (later a judge of this court) rendered an opinion on October 17, 1968, upholding the right of the TVA to condemn property for the Land Between the Lakes Project.[1] District Judge Rhodes Bratcher made a ruling to the same effect in each of the remaining cases and, on April 12, 1971, entered final judgment against the landowners vesting fee simple title to all of the tracts in the United States.

The Land Between the Lakes Project is a "demonstration in resources development" involving 170,000 acres between Kentucky and Barkley Lakes in Western Kentucky and Northwestern Tennessee.

The presidential press release of June 14, 1963, announcing the project, described it as follows:

"The President today announced that the Tennessee Valley Authority will develop a National Recreation Area as a demonstration in resource development in the 170,000 acre Between-the-Lakes area which lies between TVA's Kentucky Reservoir on the Tennessee River and the Army Corps of Engineers' Barkley Reservoir just across the divide on the Cumberland River. Two-thirds of the area involved lies in western Kentucky, the remainder in Tennessee.

"For a distance of some 40 miles above each dam the shorelines of the two lakes lie only six to twelve miles apart. They enclose a narrow strip of wooded ridges rising up to 300 feet

* Honorable Stephen J. Roth, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. In a case arising in the Middle District of Tennessee, United States ex rel. TVA

v. Wofford, No. 5084, District Judge William E. Miller (now a judge of this court) entered an order overruling motions by the landowner to dismiss, rejecting the same contentions by landowners dealt with in the opinion of Judge Brooks.

above the broad stretches of reservoir on either side.

"The President noted that the Between-the-Lakes area is within 200 miles of nearly 10 million people living in the midwest and thus the development of a national recreation area in that location meets the recommendation made by the Outdoor Recreation Resources Review Commission, and endorsed by the President in his Special Message to Congress last year, that recreation facilities for our more densely populated areas merit high priority.

"Nearly half the land under consideration for the recreation area already is in Federal ownership, under control of the Department of the Interior, TVA and the Corps of Engineers.

"The decision to proceed with the Between-the-Lakes project followed notification by Secretary of the Interior Stewart L. Udall that the Department of the Interior would enter into an agreement with TVA whereby lands administered by the Department would be turned over to TVA for the project. Other Federal lands will likewise be transferred.

"Development of the project will demonstrate how an area with limited timber, agricultural, and industrial resources can be converted into a recreation asset that will stimulate economic growth of the region. It will also help establish and define guidelines for the acquisition, development, and operation of other outdoor recreation areas.

"The area will include provision for development of new waterfowl wintering grounds in cooperation with the Bureau of Sport Fisheries and Wildlife and for management of upland game, including improvement of public hunting.

"TVA expects to start on the project at an early date. The agency will administer the area for the period required to complete the demonstration, estimated at about 10 years. At the end of that period, arrangements for permanent administration of the area for outdoor recreation will be determined."

■ We agree with the District Court that statutory authority for the Land Between the Lakes Project is conferred by 16 U.S.C. § 831u (1964), which provides as follows:

"§ 831u. Surveys; cooperation with States or other agencies

"To aid further the proper use, conservation, and development of the natural resources of the Tennessee River drainage basin and of such adjoining territory as may be related to or materially affected by the development consequent to this chapter, and to provide for the general welfare of the citizens of said areas, the President is authorized, by such means or methods as he may deem proper within the limits of appropriations made therefor by Congress, to make such surveys of and general plans for said Tennessee basin and adjoining territory as may be useful to the Congress and to the several States in guiding and controlling the extent, sequence, and nature of development that may be equitably and economically advanced through the expenditure of public funds, or through the guidance or control of public authority, all for the general purpose of fostering an orderly and proper physical, economic, and social development of said areas; and the President is further authorized in making said surveys and plans to cooperate with the States affected thereby, or subdivisions or agencies of such States, or with cooperative or other organizations, and to make such studies, experiments, or demonstrations as may be necessary and suitable to that end."

Congress voted funds for the Lands Between the Lakes Project in 1963 and for each subsequent fiscal year. A reference to congressional action funding the project from 1963 through 1971 is attached as an appendix to this opinion.

■ Moreover the legislative history discloses that objections on the basis of alleged lack of statutory authority have been made to Congressional appropriations committees on several occasions by owners of land within the project area. *See, e. g.*, Hearings on H.R. 9220 Before the Subcommittee of the Senate Committee on Appropriations, 89th Cong., 1st Sess. pt. 4 at 263 (1965). These repeated congressional appropriations, in the face of objections similar to those urged by the landowners in the present case, support the construction of 16 U.S.C. § 831u adopted by the District Court. As said by this court, speaking through Judge McAllister, in T. V. A. v. Kinzer, 142 F.2d 833, 837 (6th Cir.):

> "Moreover, Congress, by regularly appropriating funds to enable the Authority to make its contributions to the System, has demonstrated its intention that the statutory mandate is to be construed and understood in accordance with the settled construction placed upon it by the Authority, as disclosed by the Rules and Regulations setting up the Retirement System. The voting of such appropriations, in the face of the construction placed upon the Act by the Authority, has an effect similar to that resulting from the re-enactment of a statute the provisions of which had, theretofore, been interpreted by regulations; they are deemed to have received legislative ratification and, thereby, to have become embedded in the law; and are to be given the same force and effect as the statute itself."

■ Since the Land Between the Lakes Project is authorized by 16 U.S.C. § 831u, it follows that condemnation of lands for this project is authorized by 16 U.S.C. §§ 831c(h), 831c(i) and 831x, which confer on the TVA authority to condemn all properties which the TVA

Board deems necessary to carry out the purposes and provisions of the Act. *See* United States ex rel. TVA v. Welch, 327 U.S. 546, 554, 66 S.Ct. 715, 90 L.Ed. 843; Illinois Cent. R. R. v. TVA, 445 F.2d 308, 311–312 (6th Cir.).

■ The contention of the landowners that the acquisition of their land is unnecessary is answered by the well-settled rule that the necessity, expediency, location and extent of taking property by eminent domain are legislative and administrative questions that ordinarily are not subject to judicial review. Berman v. Parker, 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27; Joslin Mfg. Co. v. Providence, 262 U.S. 668, 678–679, 43 S.Ct. 684, 67 L.Ed. 1167; Illinois Cent. R. R. v. TVA, *supra*, 445 F.2d at 313.

The landowners assert that the TVA is condemning their property for the purpose of reselling it for commercial purposes. This is contradicted by the testimony of Chairman Wagner of the TVA Board at the hearings on H.R. 11579 before the Subcommittee of the Senate Committee on Appropriations, 88th Cong. 2d Sess.[2] Chairman Wagner testified to the Senate Committee as follows:

> "There never has been any attempt on our part to do anything but make it very clear that the entire area in this peninsula generally north of Highway 79 would be purchased. Now, that was in the report that went to the President in 1961 and it has been a part of our plans ever since then." Hearings transcript p. 29.

In response to a question, Chairman Wagner denied emphatically that the TVA would ever sell any of the condemned land for commercial purposes. He said:

> "We have made it clear from the beginning that we thought that this area,

2. Chairman Wagner presented to Committee a map outlining the 170,000 acres to be included in the project. This map is a part of the record on the present appeal.

There is no dispute that all the land involved on this appeal is within the area shown on this map.

to fulfill the purpose which we believe it can serve to the benefit of the people of this Nation, . . . must be completely in public ownership. . . . "

All contentions made by appellants have been considered and are found to be without merit.

Affirmed.

## APPENDIX

Fiscal 1964—H.R.Rep. No. 902, 88th Cong., 1st Sess. 19, 58 (1963), H.R.Rep. No. 1,027, 88th Cong., 1st Sess. 25 (1963), 77 Stat. 844, 854 (1963).

Fiscal 1965—H.R.Rep. No. 1479, 88th Cong., 2d Sess. 52 (1964), S.Rep. No. 1326, 88th Cong., 2d Sess. 42 (1964), 78 Stat. 682, 693 (1964).

Fiscal 1966—Hearings on H.R. 9220, 89th Cong., 1st Sess. 68 (1965), H.R. Rep. No. 527, 89th Cong., 1st Sess. 60–61 (1965), S.Rep. No. 632, 89th Cong., 1st Sess. 47 (1965), 79 Stat. 1096, 1107–08 (1965).

Fiscal 1967—H.R.Rep. No. 2044, 89th Cong., 2d Sess. 83–84 (1966), H.R.Rep. No. 2216, 89th Cong., 2d Sess. 39 (1966), 80 Stat. 1002, 1014 (1966).

Fiscal 1968—H.R.Rep. No. 505, 90th Cong., 1st Sess. 92 (1967), S.Rep. No. 574, 90th Cong., 1st Sess. 47–48 (1967), H.R.Rep. No. 820, 90th Cong., 1st Sess. 36 (1967), 81 Stat. 471, 482 (1967).

Fiscal 1969—H.R.Rep. No. 1549, 90th Cong., 2d Sess. 77 (1968), 82 Stat. 705, 715 (1968).

Fiscal 1970—H.R.Rep. No. 91–548, 1st Sess. 88–90 (1969), S.Rep. No. 91–528, 1st Sess. 54–55 (1969), H.R.Rep. No. 91–697, 1st Sess. 17 (1969), 83 Stat. 323, 336 (1969).

Fiscal 1971—H.R.Rep. No. 91–1219, 2d Sess. 94 (1970), S.Rep. No. 91–1118, 2d Sess. 59–60 (1970), H.R.Rep. No. 91–1456, 2d Sess. 37–38 (1970), 84 Stat. 902 (1970).