William M. YOUNG and Faith Adams Young, Plaintiffs-Appellants,

v.

TENNESSEE VALLEY AUTHORITY et al., Defendants-Appellees.

No. 77–1243.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1979.

Decided Sept. 24, 1979.

Robert B. Pyle, Leroy J. Ellis, III, Nashville, Tenn., William E. Garner, Scottsboro, Ala., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, Tennessee Valley Authority, Charles A. Wagner, III, Justin M. Schwamm, Clay S. Davis, Jr., Charles W. Van Beke, Knoxville, Tenn., for defendants-appellees.

Before EDWARDS, Chief Judge, and WEICK and CELEBREZZE, Circuit Judges.

WEICK, Circuit Judge.

This appeal involves the legal question whether the Tennessee Valley Authority (TVA) has authority under the Tennes-

see Valley Authority Act of 1933, 16 U.S.C. § 831 *et seq.*, to construct the Hartsville nuclear powered electric generating plant on a site located on the Cumberland River near Dixon Springs, Tennessee, outside the watershed of the Tennessee River. We hold that the TVA does possess such authority and it is supported by its own frequent and long standing construction of the Act and the evidence of ratification thereof by Congress.

The facts are not in dispute. Appellants are owners of a 150 acre farm located in Dixon Springs, Tennessee, near the site of TVA's proposed multimillion dollar Hartsville Nuclear Electric Generating Plant on the Cumberland River. Appellants filed this suit in the District Court for the Middle District of Tennessee seeking to enjoin TVA from performing site preparation for the power plant and to obtain a declaratory judgment that TVA had no statutory authority to condemn land near the Cumberland River or to construct said plant on the Cumberland River. The Cumberland River drains an area adjacent to the area drained by the Tennessee River and its tributaries. Although the Cumberland and Tennessee Rivers converge and flow close to one another for some distance before both empty into the Ohio River, see *United States ex rel. TVA v. Two Tracts of Land,* 456 F.2d 264 (6th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 108, 34 L.Ed.2d 143 (1972), it is admitted that the Cumberland River is not a tributary of the Tennessee River. The proposed plant is located well within the TVA's statutorily defined 80,000 square mile service area. When oral argument of the appeal was heard before this court on April 9, 1979, the plant was 15% completed.

The District Court denied the motion for an injunction and dismissed appellant's complaint for failure to state a claim upon which relief can be granted under Fed.R. Civ.P. 12(b)(6). The only question of law before this court is whether the Tennessee Valley Authority has authority under the Tennessee Valley Authority Act of 1933 to construct power plants outside the watershed of the Tennessee River.

The TVA was created
For the purpose of maintaining and operating the properties now owned by the United States in the vicinity of Muscle Shoals, Alabama, in the interest of the national defense and *for agricultural and industrial development,* and to improve navigation in the Tennessee River and to control the destructive flood waters in the Tennessee River and Mississippi River Basins . . . . 16 U.S.C. § 831 [Emphasis added.]

The statutes granting the TVA authority to condemn property and to construct power plants are 16 U.S.C. §§ 831c(i) and (j) which read in pertinent part as follows:

(i) *Shall have power to acquire real estate for the construction of dams, reservoirs, transmission lines, power houses, and other structures, and navigation projects at any point along the Tennessee River, or any of its tributaries,* and in the event that the owner or owners of such property shall fail and refuse to sell to the Corporation at a price deemed fair and reasonable by the board, then the Corporation may proceed to exercise the right of eminent domain, *and to condemn all property that it deems necessary for carrying out the purposes of this chapter* . . . . [Emphasis added.]

(j) *Shall have power to construct such dams, and reservoirs, in the Tennessee River and its tributaries,* as in conjunction with Wilson Dam, and Norris, Wheeler, and Pickwick Landing Dams, now under construction, will provide a nine-foot channel in the said river and maintain a water supply for the same, from Knoxville to its mouth, and will best serve to promote navigation on the Tennessee River and its tributaries and control destructive flood waters in the Tennessee and Mississippi River drainage basins; *and shall have power to acquire or construct power houses, power structures, transmission lines, navigation projects, and incidental works in the Tennessee River and its tributaries,* and to unit the various power installations into one or more systems by transmission lines. [Emphasis added.]

The phrasing of both paragraphs is certainly ambiguous. In paragraph (i) the phrase "at any point along the Tennessee River, or any of its tributaries" can be read to modify the words "navigation projects" or it can be read to modify the entire preceding list of words including the words "power houses." If the phrase is read to modify the entire list, then TVA's power to condemn is narrow and confined to condemnation "at any point along the Tennessee River, or any of its tributaries." If the phrase modifies only "navigation projects," as TVA contends, then TVA's power to condemn is broad and only condemnation of land for navigation projects is confined to "any point along the Tennessee River, or any of its tributaries." Similarly, in paragraph (j) the phrase "in the Tennessee River and its tributaries" can be read to modify only the words "incidental works," as TVA contends, so that only incidental works constructed by TVA must be actually located *in* the Tennessee River and its tributaries, or the phrase can be read to modify the entire preceding list including the words "power houses." Congress could easily have used the phrase "on the banks of the Tennessee River or its tributaries" or the phrase "within the territory drained by the Tennessee River or its tributaries," instead of the phrase "in the Tennessee River and it tributaries" in paragraph (j), or, conversely, Congress could easily have more clearly stated that TVA was free to construct power plants anywhere, so long as said plants were demonstrably constructed to achieve Congress' express purpose of fostering agricultural and industrial development in the Tennessee River Valley and the larger service area, however the Act contains no such clear statement.

Appellants concede that TVA has the authority under paragraph (i) to "condemn land in Wyoming at its Morton Ranch in order to obtain uranium for its nuclear reactors" [Appellant's Reply Brief at 7], thus appellant in one instance has adopted TVA's broad construction of paragraph (i), yet appellant contends that TVA lacks authority under similar ambiguous language in paragraph (j) to construct a power house

outside the Tennessee River watershed. The parties agree that the TVA can build dams and navigation projects only on the Tennessee River or on one of its tributaries.

In considering the legality of agency action under an enabling statute, we do not write on a clean slate. Ordinarily, a court should give great weight to the frequent, consistent, and long standing construction of a statute by an agency charged with its administration. *See e. g. Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978); *E. I. du Pont de Nemours & Co. v. Collins*, 432 U.S. 46, 54–55, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977); *Chemehuevi Tribe of Indians v. FPC*, 420 U.S. 395, 409–10, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1975); *NLRB v. Boeing Co.*, 412 U.S. 67, 74–75, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). Particularly this is true with respect to a statute which is reasonably susceptible of two different interpretations. The construction of a statute by those agencies charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress with knowledge of the facts has consistently taken no steps to prohibit or curtail the administrative actions; but has approved them. *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The record indicates that locations for TVA power plants historically have been chosen for economic reasons, such as minimizing the cost of fuel transportation and construction costs. The construction and operation of power plants and the distribution of electric energy generated therefrom requires expertise which should be accorded deference by the courts. The TVA Act in issue must be liberally construed to carry out the purposes of Congress which are, *inter alia*, to promote interstate commerce and the public welfare. 16 U.S.C. § 831dd; *United States ex rel. TVA v. Welch*, 327 U.S. 546, 551, 66 S.Ct. 715, 90 L.Ed. 843 (1946).

The legislative history of the Act contains no clear guidance. H.R. 5081, the original house bill, set forth the TVA's authority to acquire land and to construct "dams, reservoirs, power houses, power structures, and navigation projects, in the Tennessee River and its tributaries." The Senate amendment contained no such equivalent provision. The Act was recast into its present form and adopted by Congress with almost no explanation. The conference committee inserted the words "incidental works" at the end of the list presently contained in section 4(j), however, we do not consider such insertion, without more, clearly to support either construction.

TVA concedes that dams and reservoirs must be located on the Tennessee River or its tributaries. See H.R.Rep. No. 130, 73d Cong., 1st Sess. 16–20 (1933); H.R.Rep. No. 48, 73d Cong., 1st Sess. (1933). Appellants argue that this concession amounts to a concession that all items listed in section 4(j) must be located in the Tennessee River or its tributaries, however this conclusion does not necessarily follow. TVA's dams and reservoirs would be expected to be located only in the Tennessee River or its tributaries. One of the express purposes in the Act for the creation of the TVA was for it to control the destructive flood waters of the Tennessee River. 16 U.S.C. § 831, quoted *supra*. Dams or reservoirs in rivers other than the Tennessee River or it tributaries would have no effect on flooding by the Tennessee River.

We believe that the construction of the statute by TVA should be given great weight because of the frequent consistency and longevity of its construction, and the reliance placed thereon by the agency since at least the early 50's. In 1951 the TVA relied upon its interpretation of the statute to construct the Shawnee Power Plant, a coal fired steam electric generating plant located on the Ohio River below Paducah, Kentucky. The Shawnee Power Plant is located not only outside the Tennessee River watershed but outside the TVA's statutorily defined service area as well. In 1953 the TVA constructed the Gallatin Power Plant, a coal fired steam electric generating

plant located outside the Tennessee River watershed on the Cumberland River only 18 miles from the Hartsville Nuclear Power Plant site here in issue. In 1959 the TVA constructed the Paradise Power Plant, a coal fired steam electric generating plant located on the Green River, outside the Tennessee River watershed. In 1968 the TVA constructed the Cumberland Power Plant, a coal fired steam electric generating plant located on the Cumberland River, outside the Tennessee River watershed. The proposed Hartsville Power Plant, therefore, would be the third TVA electric generating plant located on the Cumberland River within the Cumberland River watershed, a watershed adjacent to, but not within, the watershed of the Tennessee River. The TVA has relied on its construction to spend several billion dollars to construct over a 28 year period power plants outside the Tennessee River watershed which power plants have provided the electricity necessary for the present economic growth and prosperity which characterizes the Tennessee River Valley sunbelt region at this time.

Although Congress since 1933 could have more clearly announced its continued support for TVA's construction of sections 4(i) and (j), we believe that there is evidence that Congress has been well aware of TVA's construction of the statutes and has ratified said construction. The Shawnee Power Plant, for example, located outside both the Tennessee River watershed and the larger TVA service area, was constructed from 1951 to 1953 with funds appropriated by Congress for the purpose after full hearings. See *Hearings Before the Senate Committee on Appropriations*, 81st Cong., 2d Sess. 241 (1950); *Additional Hearings Before Subcommittees of the House Committee on Appropriations*, 81st Cong., 2d Sess. pt. 5 at 32 (1950); 64 Stat. 1223, 1229 (1951). Congress after further hearings appropriated funds in 1952 for the construction of the Gallatin Power Plant located on the Cumberland River outside the Tennessee watershed. See *Hearings Before Subcommittees of House Committee on Appropriations*, 82d Cong., 2d Sess., pt. 3 at 76–77,

85 (1952); 66 Stat. 637, 645 (1952). The location of the proposed plants was indicated in the 1950 and 1952 hearings. We are mindful that proceedings before House and Senate committees do not establish the intent of Congress as a whole. *See TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), *aff'g* 549 F.2d 1064 (6th Cir. 1977). An appropriation enacted by Congress, for construction of electric generating plants after Congressional hearings is, however, evidence of Congressional ratification.

There is other evidence of Congressional awareness of TVA action and intent. During the period in question TVA was under a statutory duty to file written reports of its actions and intentions with Congress and the President. 16 U.S.C. § 831h(a). Every TVA annual report from 1951 to 1957 specifically described the location of Shawnee, Gallatin, or both. *See* 1951 TVA Ann.Rep. 7; 1952 TVA Ann.Rep. 18–19; 1953 TVA Ann.Rep. 15; 1954 TVA Ann.Rep. 14–15; 1955 TVA Ann.Rep. 7–9; 1956 TVA Ann. Rep. 10; 1957 TVA Ann.Rep. 47. Facing page 1 of the 1953, 1954, 1955, and 1956 reports is a map of the region showing the boundaries of the Tennessee River watershed, the boundaries of the larger TVA service area, and the location of the Shawnee and Gallatin plants.

Of less weight, but nevertheless some evidence of Congressional awareness of TVA's actions and intent is the grant in 1959 by Congress to TVA of authority to issue bonds for, *inter alia*, the construction of power plants. Since 1959 Congress has increased the bond issuing authority limit three times from $75 billion to $15 billion. 80 Stat. 346 (1966); 84 Stat. 915 (1970); 89 Stat. 750 (1975). In 1959 TVA used bond funds to construct the Paradise Steam Plant, *supra*, and in 1966 similarly used bond funds to construct the Cumberland Steam Plant, *supra*. Indeed, the Hartsville Nuclear Power Plant in issue is being constructed with funds from bonds issued pursuant to the 1975 amendment to the bond authority which amendment allowed the issuance by TVA of up to $15 billion in bonds for, *inter alia*, the construction of power

plants. Each of these three plants is located outside the Tennessee River watershed but well within the TVA service area. TVA duly informed Congress and the President in annual reports from 1960 to 1975 of its plans to build Paradise, Cumberland, and Hartsville and its progress in said projects. *See e. g.* 1960 TVA Ann.Rep. 10, 18; 1962 TVA Ann.Rep. 20; 1965 TVA Ann.Rep. 44; 1966 TVA Ann.Rep. 48; 1968 TVA Ann. Rep. 39; 1974 TVA Ann.Rep. 49; 1975 TVA Ann.Rep. 45. This grant of bond issuing authority by Congress, followed by several increases in the issuance authority over a period of years in the face of annual reports by the responsible agency is evidence of ratification by Congress.

Appropriation by Congress of funds for agency action in the face of a construction placed upon an enabling act by the agency has the effect of ratifying the agency action when the agency construction is consistent with the purpose of the legislation. *Ivanhoe Irrigation Dist. v. McCracken*, 357 U.S. 275, 292–94, 78 S.Ct. 1174, 2 L.Ed.2d 1313 (1958); *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 116, 67 S.Ct. 1129, 91 L.Ed. 1375 (1947); *Brooks v. Dewar*, 313 U.S. 354, 360–61, 61 S.Ct. 979, 85 L.Ed. 1399 (1941); *Isbrandtsen-Moller Co. v. United States*, 300 U.S. 139, 147, 57 S.Ct. 407, 81 L.Ed. 562 (1937); *TVA v. Kinzer*, 142 F.2d 833, 837 (6th Cir.1944). The record shows that TVA has acted to fulfill its responsibilities under the Act and has been supported in its efforts by Congress. This rule regarding Congressional ratification of an agency construction of a statute should apply with even greater force where Congress not only appropriated funds to support agency action but Congress and the President by statute were informed of the position of the TVA by reports for the last 28 years.

Appellants' reliance on the decision of the Supreme Court in *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) involving an endangered species of fish called snail darters is misplaced. Unlike the agency action in the present case which the Act could reasonably be construed as authorizing, the agency action in *Hill* specifically violated not only the express provisions of

the Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.* (1974), but also violated regulations issued by the Secretary of the Interior in which it was declared that pursuant to § 7 "all Federal Agencies must take such action as is necessary to ensure that actions authorized, funded, or carried out by them do not result in the destruction or modification of this critical habitat area." The court in *Hill* also applied the rule that repeals by implication are not favored. No such claim was made by TVA in the present case that the Act was repealed in any respect. Its claim was simply that its actions were authorized by its long standing construction of the statute and the evidence of ratification thereof and not prohibited specifically by an Act of Congress.

We decline to find that TVA has chosen an incorrect construction of an ambiguous statute for at least 29 years while it otherwise has faithfully fulfilled the purposes of the Act. We see no larger social benefit which would flow from such a holding at this late date.

This court previously touched upon this issue in different circumstances. In *United States ex rel. TVA v. Easement & Right-of-Way, Logan Co., Ky.*, 375 F.2d 120 (6th Cir.1967), a condemnation proceeding wherein the TVA sought to condemn land located within the service area for the construction of power transmission lines, this court affirmed a District Court opinion which upheld the authority of the TVA to condemn such land and to build the Paradise Steam Plant. Similarly, in *Illinois Central R. R. v. TVA*, 445 F.2d 308 (6th Cir. 1971), a condemnation proceeding wherein the TVA sought to condemn land located outside the TVA service area for the construction of a coal conveyor belt, this court in an opinion written by Judge William E. Miller, affirmed the finding of the District Court that the TVA had the authority under the Act to condemn such land and further stated with respect to the Cumberland and Shawnee power plants that:

> [i]t is provided that proceeds so raised [by the sale of bonds by TVA] may be used "for other purposes incidental" to performing the power generating and transmitting functions authorized by the Act.

16 U.S.C. § 831n–4(a). *If, as we think, the Act does not bar TVA from constructing facilities outside the Tennessee Valley*, and the mining and shipping of coal is a necessary incident to the power generating function, then this [bond issuing authority] amendment strengthens our view that the TVA has the authority to provide the facilities which it finds necessary to perform its functions. [Emphasis added.]

We are not convinced that we should overrule our decisions. See also, *United States ex rel. TVA v. Puryear*, 105 F.Supp. 534 (W.D.Ky.1952); *Rainbow Realty Co. v. Tennessee Valley Authority*, 124 F.Supp. 436 (M.D.Tenn.1954).

The judgment of the District Court is affirmed.

CELEBREZZE, Circuit Judge, dissenting.

I respectfully dissent.

First, I interpret the relevant statute, 16 U.S.C. § 831c(i) & (j), to limit TVA's ability to condemn land for power houses to points along the Tennessee River or its tributaries. I believe this is the clear import of the statutory language and we should not stretch its meaning in this case.

Second, I do not believe it is appropriate to apply to this case the rule that a court should give great weight to a consistent statutory interpretation by an agency charged with the statute's administration. All of the cases cited in the majority opinion for this proposition concern federal administrative agencies which have been given some degree of discretion in administering federal policy. The TVA, on the other hand, is a federally owned corporation which exists for the purpose of supplying electricity and other related functions. The statute in question here is not one that the TVA has been given discretion to administer. Rather, the statute is the TVA's enabling provision that sets forth the scope of its powers. I do not believe a court should defer to an agency's interpretation of what statutory authority has been given to it by Congress.

Third, while the majority seeks to distinguish *TVA v. Hill*, 437 U.S. 153, 98 S.Ct.

2279, 57 L.Ed.2d 117 (1978), *aff'g* 549 F.2d 1064 (6th Cir.1977), it seems to me that they ignore the teaching of *Hill* that appropriations of funds by Congress cannot serve to amend or repeal other Congressional enactments. The fact that Congress has appropriated funds for the Hartsville nuclear plant is just as irrelevant here as was the appropriation of funds for the Tellico Dam at issue in *Hill*. *See* 437 U.S. at 189–93, 98 S.Ct. 2279.

Fourth, this court's prior decisions in *United States ex rel. TVA v. Easement and Right of Way*, 375 F.2d 120 (6th Cir.1967), and *Illinois Central R.R. Co. v. TVA*, 445 F.2d 308 (6th Cir.1971), do not control this case and need not be overruled in order to reverse the district court. The former dealt with power transmission lines and the latter concerned a coal conveyor belt. Neither dealt with the issue at hand, *viz.*, whether the TVA can build a power house at a point not along the Tennessee River or its tributaries. I believe it cannot.

I would reverse and remand with directions to grant the injunction.