UNITED STATES of America for the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY

v.

AN EASEMENT AND RIGHT–OF–WAY OVER 1.8 ACRES OF LAND, MORE OR LESS, IN MAURY COUNTY, TENNESSEE, M. Glenn West, et al.

UNITED STATES of America for the Relation and for the Use of the TENNESSEE VALLEY AUTHORITY

v.

A TEMPORARY RIGHT TO ENTER UPON LAND; an Easement and Right–of–Way Over 5.2 Acres of Land, More or Less; and an Easement and Right–of–Way for an Access Road Over 0.3 Acres of Land, More or Less, in Maury County, Tennessee, Theodore Marvin Davis, et al.

Nos. 1–87–0066, 1–86–0054.

United States District Court, M.D. Tennessee, Columbia Division.

March 24, 1988.

William M. Leech, Jr., Columbia, Tenn., Corabel Alexander, Waller, Lansden, Dortch & Davis, Nashville, Dennis J. Meaker, Nashville, Tenn., for Davis defendants.

Joe I. Majors, Chairman, Ortale, Kelley, Herbert & Crawford, Jack Derryberry, Ward, Derryberry & Thompson, William Farmer, Nashville, Tenn., appointed comrs.

Edward S. Christenbury, Gen. Counsel, James E. Fox, Deputy Gen. Counsel, Mark B. Cherpack, Kenneth D. Mielke, Brent Marquand, Trial Attys., Tennessee Valley Authority, Knoxville, Tenn., for plaintiff.

## MEMORANDUM

WISEMAN, Chief Judge.

In separate lawsuits against two individual landowners,[1] the plaintiff Tennessee Valley Authority (TVA) has attempted to acquire by eminent domain both easements and rights of way for the erection and maintenance of a 7.2 mile 161–kV electric power transmission line. The line will provide electricity to the new Saturn Corporation's automobile assembly plant in Spring Hill, Tennessee. The Saturn plant will be a single, directed-served customer of TVA. Defendants Davis and West own land that is in the proposed path for the new line. After TVA filed declarations of taking against each landowner pursuant to 40 U.S.C. § 258a and after this Court ordered that TVA take immediate possession of the condemned property, each landowner filed a motion to set aside the order of immediate possession.[2] In response, TVA has

---

1. *United States ex rel. Tennessee Valley Authority v. Davis,* No. 1–86–0054 (M.D.Tenn., filed July 8, 1986); *United States ex rel. Tennessee Valley Authority v. West,* No. 1–87–0066 (M.D.Tenn., filed Sept. 10, 1987).

2. In the *Davis* case, TVA filed a second declaration of taking on January 22, 1988 and obtained the order of immediate possession on January 25. This followed an initial taking solely for survey purposes. The motion to set aside the order was filed on January 29, 1988. In the *West* case, TVA filed a declaration of taking on September 10, 1987 and obtained the order of immediate possession on September 16. The motion to set aside the order was filed on October 13 and granted on October 23. Hearings on these motions were held both in *Davis* (February 1, 1988) and in *West* (November 9, 1987).

filed a motion to strike a defense against one landowner and motions for partial summary judgment against both landowners.[3]

The defendants' answers to the complaints and motions to set aside the Court orders make the same argument. According to the landowners, TVA allegedly abused its discretion and acted arbitrarily and capriciously by failing to consider several factors: less restrictive alternate routes, inconvenience to the landowners, economic detriment, the environmental and aesthetic impact on the property, and safety.[4] Both landowners challenge the compensation proposed by the Court appointed Commission as inadequate. Davis also argues that the taking does not qualify as a public use because the line will serve a single industrial customer.

At the February 1, 1988 hearing on pending motions in the *Davis* case, defendants' attorney moved orally for consolidation of both cases under Fed.R.Civ.P. 42.[5] This memorandum consolidates the cases and addresses the outstanding motions.

## I. *Consolidation Under Rule 42*

Rule 42(a) reads as follows:

> (a) **Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Consolidation is a matter for the trial court's discretion. Consolidation is not joinder. It is a matter of convenience and economy but does not merge the suits into a single cause, or change the rights of parties, or make those who are parties in one suit parties in another. *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496, 53 S.Ct. 721, 727–28, 77 L.Ed. 1331, 1345 (1933). Although certain actions may be resolved together, each retains its separate character and requires entry of a separate judgment. *See* 9 C.A. Wright & A.R. Miller § 2382 at 254 (1971 & Supp.1987).

■ TVA's only objection to defendant's motion is that it considers consolidation on the issue of taking unnecessary and consolidation on the issue of just compensation a matter for the Court appointed Commission. This Circuit has long recognized a district court's power under Rule 42(b) to sever issues or claims, as when it orders separate trials on the issues of liability and damages. *See In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir.1982), *citing Moss v. Associated Transport*, 344 F.2d 23 (6th Cir.1965). This Court has already appointed a three person commission to consider the issue of just compensation and has reserved trial of all other issues to itself.[6] Granting the motion to consolidate solely on the issue of taking will not alter this procedure. Further, consolidation is particularly appropriate on these facts. The defendants, represented by the same attorney, make virtually identical arguments in opposing the taking of property for construction and maintenance of a single power line. TVA's briefs in both cases are almost verbatim copies of each other. The numerous common elements of law and fact and the need to render a decision quickly in this case[7] militate in favor of

---

**3.** In *Davis*, the motion to strike was filed on October 30, 1987. TVA moved for partial summary judgment on the validity of the taking in both *Davis* and *West* on February 1, 1988.

**4.** Answers by the defendants listed all of these factors, in apparent reliance upon a scholarly article on the exercise of eminent domain by power companies. *See* Annotation, *Eminent Domain: Review of Electric Power Company's Location of Transmission Line for Which Condemnation is Sought,* 19 A.L.R. 4th 1026 (1983). In their motions, however, defendants make only two objections to the taking—that an alternate easement available to TVA should have been used and that TVA neglected to address safety and environmental concerns.

**5.** Motion to Consolidate, *Davis* (No. 1–86–0054).

**6.** *See* Order Appointing Commissioners, *Davis* (No. 1–86–0054) and Order Appointing Commissioners, *West* (No. 1–87–0066).

**7.** According to affidavits submitted by TVA employees, if TVA does not obtain immediate possession of the property by April 1, 1988, the Saturn automobile assembly plant construction will be delayed and effect employees of the plant in middle Tennessee. *See* Motion to

consolidation. Accordingly, these cases are consolidated for the purpose of deciding the dispositive motions before the Court.

## II. *Dispositive Motions*

In *West,* the Court has already rescinded its September 16, 1987 order of immediate possession; TVA has moved the Court to strike West's defense, to reinstate the original order, and to grant partial summary judgment on the validity of the taking. In *Davis,* the Court held a hearing on defendant's motion to set aside its January 25, 1988 order of immediate possession. TVA has moved for partial summary judgment against Davis. Resolution of all these motions turns on an examination of two core issues: TVA's power to take real property through eminent domain and this Court's power to review the taking.

The TVA Act of 1933, 16 U.S.C. § 831c(h) (1985 & Supp.1987) gives TVA the power to exercise the right of eminent domain.[8] Subsection (i) explicitly gives TVA the power to acquire real estate for the construction of transmission lines.[9] In a seminal case in which TVA's exercise of eminent domain was questioned, the Supreme Court defined the scope of TVA's authority under the Act. *TVA v. Welch,* 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1946). The Act is to be liberally construed to carry out Congress' purposes. *Id.,* 327 U.S. at 551, 66 S.Ct. at 717; 16 U.S.C. § 831dd. It is the function of Congress to decide what type of taking is for a public use and that the agency authorized to do the taking may do

so to the full extent of its statutory authority. *Id.* at 551–552, 66 S.Ct. at 717–718. Once Congress has defined a public use, its decision is entitled to great deference. A departure from judicial restraint would result in courts deciding what is and what is not a governmental function and in their invalidating legislation on the basis of their view on that question at the moment of decision. *See id; Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27, 31 (1954), (explaining the "extremely narrow" scope of judicial review), *cited in Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 239–241, 104 S.Ct. 2321, 2328–30, 81 L.Ed.2d 186, 196–198 (1984). The *Welch* Court also noted an axiomatic principal of eminent domain: that where public need requires acquisition of real property, that need is not to be denied because of an individual's unwillingness to sell. *Welch,* 327 U.S. at 554, 66 S.Ct. at 719.

Three concurring Justices in *Welch* expressed concern about the scope of judicial review left intact by the majority opinion. Justice Reed, concurring separately, explained that TVA's good-faith determination that condemnation is needful does not forestall all judicial examination. There are in effect two levels of inquiry: whether the taking is for a public purpose because it is within the authority legitimately granted to the agency by the legislature; and whether the necessity and the scope of the taking suit that purpose. The first question is subject to judicial review; the second is not. *Cf. Berman,* 348 U.S. at 32, 75

Ascertain Status of Plaintiff's Motion for Partial Summary Judgment, *Davis;* Motion to Ascertain Status of Plaintiff's Motions for Partial Summary Judgment and to Reinstate the Order of Possession, *West.*

**8.** 16 U.S.C. § 831c(h) says that TVA
   Shall have power in the name of the United States of America to exercise the right of eminent domain, and in the purchase of any real estate or the acquisition of real estate by condemnation proceedings, the title to such real estate shall be taken in the name of the United States of America, and thereupon all such real estate shall be entrusted to the Corporation as the agent of the United States to accomplish the purposes of this chapter.

**9.** 16 U.S.C. § 831c(i) further states that TVA

Shall have power to acquire real estate for the construction of dams, reservoirs, *transmission lines,* power houses, and other structures, and navigation projects at any point along the Tennessee River, or any of its tributaries, and in the event that the owner or owners of such property shall fail and refuse to sell to the Corporation at a price deemed fair and reasonable by the board, then the Corporation may proceed to exercise the right of eminent domain, and to condemn all property that it deems necessary for carrying out the purposes of this chapter, and all such condemnation proceedings shall be had pursuant to the provisions and requirements hereinafter specified, with reference to any and all condemnation proceedings....
(emphasis added).

S.Ct. at 102. Justice Reed said that the constitutional doctrine of the Separation of Powers would be unduly restricted if an administrative agency could invoke a political power to immunize its action against judicial examination in contests between the agency and the citizen. *Id.* at 556, 66 S.Ct. at 720.

A more recent Supreme Court case on eminent domain not involving TVA addressed the question whether the Public Use Clause of the Fifth Amendment prohibited the State of Hawaii from taking property from lessors and transferring it to lessees to disperse ownership of fees simple. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). In upholding the State legislation, the Court said that the legislature determines what is a public use. Deference to that determination is required until it is shown to involve an impossibility. *See id.* at 240, 104 S.Ct. at 2329. The Court will only substitute its judgment for the legislature's as to what is a public use if it is palpably without reasonable foundation. *See id.* at 240–241, 104 S.Ct. at 2329. If the object is within the authority of the legislature, however, the means are for the legislature to determine as well. *Id.*

Cases in this circuit that address TVA's potential to abuse its power of eminent domain echo the approach of the *Welch* concurrence. Courts first consider whether TVA's taking is for a public use because it is within TVA's power under the Act. TVA may abuse its discretion if it acts arbitrarily and capriciously—i.e., so outrageously that it is outside the scope of TVA's statutory grant.[10] Once the courts determine that the taking is a public use

falling within TVA's powers under the Act, however, the necessity and scope of the particular taking at issue are not subject to judicial review. Abuse of discretion is a threshold inquiry into whether TVA may take at all, not a judicial critique of the manner in which the taking is accomplished.

> The allegation of landowners that the officials authorized by the Congress to select the lands necessary to be taken for public use acted in bad faith and arbitrarily and capriciously in making the selection does not transmute the legislative question involved into a judicial question. *United States ex rel. Tennessee Valley Authority v. Road Easement in Coffee County,* 424 F.Supp. 567 (E.D. Tenn.1976).

In two early cases, landowners opposed TVA's condemnation of property for easements and rights of way in erection of electric transmission lines. Landowners argued that TVA had acted arbitrarily and capriciously in its location of the power lines. Both courts concluded that because the property was taken for a public purpose made explicit by statute, the courts were without power to review the amount of land taken, the location of the lines, the time for the taking, and the need for the taking. *See United States ex rel. TVA v. Dugger,* 89 F.Supp. 877 (E.D.Tenn.1948); *United States ex rel. TVA v. Easement and Right–of–Way,* 235 F.Supp. 376 (N.D. Miss.1964). In several other cases in which landowners have opposed TVA's exercise of eminent domain on the ground of arbitrary and capricious conduct, similar analysis has led to results that always favor the agency.[11]

---

**10.** One district court in this circuit ruled that condemnation of property by TVA to build a microwave reflector station was within TVA's statutory authority. The court observed that there may be valid objections such as an effort to acquire property entirely outside the purposes granted to the condemnor by law, i.e., as if the TVA should undertake to acquire a body of land on which to build spaceships. *United States ex rel. Tennessee Valley Authority v. 0.08 Acres of Land,* 246 F.Supp. 408, 410 (E.D.Tenn. 1965).

**11.** *Accord United States ex rel. Tennessee Valley Authority v. Road Easement,* 424 F.Supp. 567 (E.D.Tenn.1976) (when condemnation by TVA for right of way and easement for Normandy Dam and reservoir authorized by statute, taking more land than necessary not arbitrary and capricious); *United States ex rel. Tennessee Valley Authority v. Two Tracts of Land,* 387 F.Supp. 319 (E.D.Tenn.1974) (because industrial development of region not too remote from Tellico Dam and Reservoir project, possibility that condemned property might be resold to private party did not make initial taking arbitrary and capricious), *aff'd,* 532 F.2d 1083 (6th Cir.1976),

The defendant landowners do not examine these precedents in their briefs. Instead, they argue that TVA was required to consider alternate routes, convenience, economic detriment, environmental and aesthetic factors, and safety; failure to consider these factors, according to the landowners, constitutes arbitrary and capricious behavior by TVA. Defendants do not cite any authority for the proposition that TVA must take these factors into account before acquiring property by eminent domain, nor do they offer affidavits or other support to show that in fact TVA ignored them. Defendants rely on cases outside this circuit, none of which involve TVA. For example, *Williams v. Transcontinental Gas Pipeline Corp.*, 89 F.Supp. 485 (W.D.S.C.1950) is cited for the proposition that when a condemnor acts with bad faith or abuses its discretion, a court may intervene to protect the landowner. However, the *Williams* court first determined that the pipeline company had authority to condemn the plaintiff's property under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, and that the procedure by which the property had been condemned met the requirements of due process. *See id.* at 486–87. Given a valid public purpose, the condemnor's determination of necessity was considered conclusive. *See id.* at 489. The Court insisted that a finding of a more convenient, alternate route will not halt eminent domain and then ruled against the landowner. *Id.* at 489. *Houston Lighting & Power Co. v. Klein Independent School District*, 739 S.W.2d 508 (Ct.App.Tex.1987), is cited for the proposition that it is an abuse of discretion to ignore safety factors in erection of electric transmission lines when studies by some scientists show a link between power line exposure and cancer. This case is inapplicable for several reasons. First, it does not involve TVA. Implicit in *Welch* is the Supreme Court's belief that an agency's authority to exercise the power of eminent domain is statute-specific, peculiar to the particular agency in question. The case is further distinguishable on its facts: the utility in the Texas case erected a 79.2 mile 345–kV line across a schoolyard; TVA proposes to erect a 7.2 mile 161–kV line across farmland. Finally, the decisions of the Texas Court of Appeals are simply not binding on this Court.

■ Neither the law nor the facts before the Court support the defendants' contentions. TVA's condemnation of property for the erection of electric transmission lines is explicitly permitted by the TVA Act, 16 U.S.C. § 831c(i). Condemnation for service to a single industrial customer does not forestall a finding that the taking is for a public use. *See City of Loudon v. Tennessee Valley Authority*, 585 F.Supp. 83, 86 (E.D.Tenn.1984), *aff'd*, 754 F.2d 372 (6th Cir.1984); *Volunteer Electric Co-op. v. Tennessee Valley Authority*, 139 F.Supp. 22 (E.D.Tenn.1954) (express Congressional approval of TVA's direct sales to industry because sales keep domestic and rural rates low), *aff'd*, 231 F.2d 446 (6th Cir. 1956); *cf. Midkiff*, 467 U.S. 229, 244, 104 S.Ct. 2321, 2331 (no need for entire community to benefit from a public use because a private transaction may be raised by its class or character into a public affair). Because the takings in both *Davis* and *West* are for a public use, this Court will not reexamine the necessity and scope of the particular takings.

■ Even if the Court did consider how TVA acquired the property, the Court would conclude that, far from abusing its discretion, TVA went to great lengths to erect the line with the least distress to the landowners. In determining whether an environmental impact statement would be necessary under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.* (1977 & Supp.1987), TVA not only consulted its own environmental experts as the statute required but also sought advice from seven different state and federal agencies, none of which disagreed with

cert. denied, 429 U.S. 827, 97 S.Ct. 84, 50 L.Ed.2d 90 (1976); *United States ex rel. Tennessee Valley Authority v. 544 Acres of Land*, 314 F.Supp. 273 (E.D.Tenn.1969) (that a portion of land taken

for dam and reservoir project might be sold to a development company did not make the initial taking arbitrary or capricious).

TVA's conclusion that environmental impact on the land would be slight.[12] Of the three routes initially selected by TVA for the line, the agency chose the route that was least costly and least damaging to the landowners in its path.[13] TVA held a public meeting to address neighborhood concerns about the new power line: none of the issues raised by these defendants were raised at the meeting.[14] Finally, TVA staff met with individual landowners whose property was being condemned. TVA's records about its meeting with the defendants are especially revealing. West simply did not want the power line on his land.[15] Davis expressed concern not about radiation from the power lines but about whether the transmission line would frustrate his plans to mine phosphate from his property. To accommodate Davis, TVA adjusted the line, which still cut across Davis' property.[16] Defendants have offered no facts to contradict this portrait of TVA's administrative competence. Indeed, apart from their assertion that TVA had an alternate easement available to it, defendants offer no factual support for their allegations of arbitrary and capricious conduct. From

the record before this Court, it appears that TVA did in fact consider alternate routes, environmental impact, and the impact on the landowners themselves. Defendants' bare assertions of misconduct are without merit.

Upon timely motion or at any time by its own initiative, the Court may order stricken from any pleading any insufficient defense. *See* Fed.R.Civ.P. 12(f). Once the issue of just compensation is severed, the sole defense offered is that of TVA's allegedly arbitrary and capricious conduct. When arbitrary and capricious conduct is cited to challenge the necessity and scope of the taking, the defense is inadequate as a matter of law. Striking this defense effectively eviscerates the defendants' case. Further, the absence of any real dispute on genuine issues of material fact makes partial summary judgment on the validity of the taking appropriate. *See* Fed.R.Civ.P. 56.

*Conclusion*

For the reasons stated in this Memorandum, the motion to strike a defense in the

---

**12.** In his affidavit, Hugh Stimson Barger, an environmental engineer for TVA who reviewed the impact of the proposed line, listed the agencies contacted. TVA informed various agencies of the State of Tennessee and the United States Soil Conservation Service about the proposed action. The State agencies included the Tennessee State Planning Office, Tennessee Department of Transportation, Tennessee Department of Economic and Community Development, Tennessee Department of Public Health, Tennessee Department of Conservation, Tennessee Wildlife Resources Agency, and the Tennessee Department of Agriculture. *See* Affidavit of Hugh Stimson Barger at 4 (copies submitted in both cases).

Neither defendant's answer argued that TVA failed to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, by not preparing an environmental impact statement (EIS). In subsequent motions, however, defendants argued that the erection of the line is a major federal action significantly *affecting* the quality of the human environment and that it therefore requires an EIS. *See* Supplements to Defendant's Motion to Set Aside Order Granting Possession and Response to Plaintiff's Motion for Summary Judgment at 3, *Davis* (No. 1–86–0054) and *West* (No. 1–87–0066) (the motions are identical). Defendant's failure to raise the NEPA issue in its answer means that this de-

fense to the taking has been waived. Fed.R.Civ.P. 71A(e). Further, TVA has submitted two affidavits from employees responsible for meeting the NEPA requirements; they explain in great detail why the decision not to carry out a EIS conformed to federal law. *See* Affidavit of Thomas Anthony Wojtalik and Affidavit of Hugh Stimson Barger (copies submitted in both cases).

**13.** *See* Affidavit of William Steven Pitt (submitted in both cases).

**14.** *See* Barger affidavits at 5–6.

**15.** *See* Wojtalik affidavit, *West,* Exhibit A. Mr. Wojtalik's record of the meeting explained West's refusal.

Charles Gray and I met with Mr. West on April 7, 1986, to discuss a relocation he requested. He wants the line moved off his property or as near to the northwest corner as possible. I told Mr. West we could do this only if the line design was not appreciably changed and if the adjoining property owners consented. Mr. West was very cordial but simply doesn't wish to have the line conflicting with possible future development of the land.

**16.** *See* Pitt affidavit, *Davis,* Exhibit B.

*West* case is granted. Motions for partial summary judgment by TVA in both cases are also granted. The orders of immediate possession of the property to TVA are reinstated.