**UNITED STATES of America upon the relation and for the use of the TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

**EASEMENTS AND RIGHTS OF–WAY OVER A TOTAL OF 15.69 ACRES OF LAND, MORE OR LESS, IN GORDON COUNTY, GEORGIA, Janie Sue Caudle, individually and as co-executor of the estates of J.W. Moss, Jr., and Willene R. Moss, also known as Jane Moss Caudle, and Jonathan W. Moss, III, as co-executor of the estates of J.W. Moss, Jr., and Willene R. Moss, Defendants.**

Civil Action No. 4:08–CV–0066–HLM.

United States District Court,
N.D. Georgia,
Rome Division.

Dec. 4, 2008.

Edwin W. Small, Philip J. Pfeifer, Tennessee Valley Authority, Office of the General Counsel, Knoxville, TN, for Plaintiff.

Donald C. Evans, Jr., Vaughan & Evans, Cartersville, GA, for Defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a condemnation action brought by the United States of America on behalf of the Tennessee Valley Authority ("TVA"). The case is before the Court on Plaintiff's Motion for Judgment on the Pleadings With Respect to Defendants' Defenses to the Taking [11].

## I. Background

### A. Procedural Background

On April 25, 2008, Plaintiff filed its Complaint in this action. (Docket Entry No. 1.) Plaintiff seeks to condemn a portion of Defendants' property under the TVA Act of 1933, as amended. (Compl. ¶ 2.) Plaintiff seeks to acquire "permanent ease-

ments and rights-of-way" for "the erection, operation, and maintenance of electric power transmission circuits and communication circuits." (*Id.* ¶¶ 3–4.)

On that same day, Plaintiff tendered $77,600 into the registry of the Court. (Docket Entry Nos. 3, 5.) That amount represented Plaintiff's estimate of just compensation for the easement and right-of-way taken. (Notice of Decl. of Taking ¶ 2.)

On that same day, Plaintiff filed a Notice of Declaration of Taking and a Notice of Condemnation. (Docket Entry No. 2 (Notice of Condemnation), No. 3 (Notice of Declaration of Taking).) The Notice of Declaration of Taking defines the condemned property as follows:

> Permanent easements and rights-of-way, consisting of the perpetual right to enter and to erect, maintain, repair, rebuild, operate, and patrol lines of transmission line structures with sufficient wires and cables for electric power circuits and communication circuits, and all necessary appurtenances, in, on, over, and across said rights-of-way, together with the right to clear said rights-of-way and keep the same clear of all trees, brush, buildings, signboards, billboards, stored personal property, and fire hazards, to destroy or otherwise dispose of such trees and brush, to prevent the drilling or sinking of wells within the rights-of-way, and to remove, destroy, or otherwise dispose of any trees located beyond the limits of said rights-of-way which in falling could come within ten feet of any transmission line structure or conductor located thereon, the Tennessee Valley Authority to remain liable for any direct physical damage to the land, annual crops, fences, and roads resulting directly from the operations of the construction and maintenance forces of the Tennessee Valley Authority and its contractors in and about the erection and maintenance thereof, all upon, under, over, and across the following-described land:

> *TRACT NO. MLCP–37*

> A parcel of land located in Land Lots 126, 125, and 91, the Fourteenth District, Third Section, of Gordon County, State of Georgia, as shown on a map entitled "Center Point–Moss Lake 115–kV/230kV Transmission Line," drawing LW–7996, sheet P2, R.3, the portions of said map which shows said parcel of land being attached to the Declaration of Taking filed herein, the said parcel being more particularly described as follows:

> Commencing at a point which is a common corner in the lands of Janie Sue Caudle, et al, (TVA Tract No. MLCP–29), Odis T. Owens, and others, the said point being on a fence line and being a point common to Land Lots 92, 89, 90, and 91; thence leaving the said common corner and with the said fence line, the property line between Janie Sue Caudle, et al. (TVA Tract No. MLCP–29), and Odis T. Owens, and the line between Land Lots 92 and 89 N. 87° 22′ 03″ W., 93 feet to a point on the centerline of the transmission line location at survey station 282+32.3; thence leaving the said fence line, the said property line, and the said land lot line and with the centerline of the location S. 08° 05′ 31″ E., 1,643.07 feet, crossing the line between Land Lots 92 and 91 at survey station 275+77.41, to an angle point in the centerline of the location at survey station 265+89.23; thence continuing with the centerline of the location S. 03° 59′ 10″

W., 1,001.28 feet to a point on the southeast right-of-way line of the State of Georgia (SR 225/Spring Place Road) and the northwest property line of Janie Sue Caudle, et al. (TVA Tract No. MLCP–27), at survey station 255 + 87.95, the said point being the POINT OF BEGINNING.

Thence leaving the point of beginning and the centerline of the location and with the meanders of the said road right-of-way line and the said property line in a northeasterly direction 138.07 feet to a point on the east right-of-way line of the location, the said point being 75 feet right of the centerline of the location at survey station 257 + 03.80; thence leaving the said road right-of-way line and the said property line and with the said east right-of-way line of the location S. 03° 59′ 10″ W., 955.96 feet, crossing the line between Land Lots 91 and 126, to a point diametrically opposite an angle point in the centerline of the location at survey station 247 + 12.50; thence with the northeast right-of-way line of the location S. 46° 28′ 57″ E., 1,068.81 feet to a point in the centerline of a drain and the property line between Janie Sue Caudle, et al. (TVA Tract No. MLCP–27), and Ronald Lee Hunt, the said point being 75 feet right of the centerline of the location at survey station 236 + 08.34; thence leaving the said northeast right-of-way line of the location and with the meanders of the centerline of the said drain and the said property-line in a southwesterly direction 156.92 feet, crossing the centerline of the location at survey station 235 + 85.8 (78.38 feet), to a point on the southwest right-of-way line of the location, the said point being 75 feet left of the centerline of the location at survey station 235 + 62.59; thence leaving the centerline of the said drain and the said property line and with the said southwest right-of-way line of the location N. 46° 28′ 57″ W., 1,185.26 feet, crossing the line between Land Lots 126 and 125, to a point diametrically opposite an angle point in the centerline of the location at survey station 247 + 12.50; thence with the west right-of-way line of the location N. 03° 59′ 10″ E., 817.03 feet to a point on the aforementioned southeast right-of-way line of the State of Georgia (SR 225/Spring Place Road), and northwest property line of Janie Sue Caudle, et al. (TVA Tract No. MLCP–27), the said point being 75 feet left of the centerline of the location at survey station 254 + 94.18; thence leaving the said west right-of-way line of the location and with the meanders of the said road right-of-way line and the said property line in a northeasterly direction 120.13 feet, crossing the aforementioned line between Land Lots 125 and 126 and also crossing the line between Land Lots 126 and 91, to the point of beginning and containing 6.91 acres, more or less.

Furthermore, the above-described easement rights are acquired with respect to such appurtenant right, title, and interest as the owner of the above-described land may have in Tract MLCP–28, the State of Georgia (SR 225/Spring Place Road), the adjoining road right-of-way shown on the above-mentioned maps (Attachment 2 to the Declaration of Taking).

Furthermore, the permanent easement rights include the perpetual right to install, maintain, and replace guy wires and necessary appurtenances outside the right-of-way for the transmission line structure located at survey station 247 + 12.50.

*TRACT NO. MLCP–29*

A parcel of land located in Land Lots 92 and 91, the Fourteenth District, Third

Section, of Gordon County, State of Georgia, as shown on a map entitled "Center Point–Moss Lake 115kV/230–kV Transmission Line," drawing LW–7996, sheet P2, R.3, the portion of said map which shows said parcel of land being attached to the Declaration of Taking filed herein, the said parcel being more particularly described as follows:

Commencing at a point which is a common corner in the lands of Janie Sue Caudle et al., Odis T. Owens, and others, the said point being on a fence line and being a point common to Land Lots 92, 89, 90, and 91; thence leaving the said common corner and with the said fence line, the property line between Janie Sue Caudle, et al., and Odis T. Owens; and the line between Land Lots 92 and 89 N. 87° 22' 03" W., 16.66 feet to a point on the east right-of-way line of the transmission line location, the said point being the POINT OF BEGINNING.

Thence leaving the point of beginning, the said fence line, the said property line, and the said land lot line and with the said east right-of-way line of the location S. 08° 05' 31" E., 1,636.76 feet, crossing the line between Land Lots 92 and 91, to a point diametrically opposite an angle point in the centerline of the location at survey station 265 + 89.23; thence continuing with the said east right-of-way line of the location S. 03° 59' 10" W., 787.96 feet to a point on the northwest right-of-way line of the State of Georgia (SR 225/Spring Place Road) and the southeast property line of Janie Sue Caudle, et al., the said point being 75 feet right of the centerline of the location at survey station 258 + 09.21; thence leaving the said east right-of-way line of the location and with the meanders of the said road right-of-way line and the said property line in a south-

westerly direction 280.88 feet, crossing the centerline of the location at survey station 256 + 77.98 (151.30 feet) and also crossing the aforementioned line between Land Lots 91 and 92, to a point on the west right-of-way line of the location, the said point being 75 feet left of the centerline of the location at survey station 255 + 72.49; thence leaving the said road right-of-way line and the said property line and with the said west right-of-way line of the location N. 03° 59' 10" E., 1,008.80 feet, crossing the aforementioned line between Land Lots 92 and 91, to a point diametrically opposite an angle point in the centerline of the location at survey station 265 + 89.23; thence continuing with the said west right-of-way line of the location N. 08° 05' 31" W., 1,649.30 feet, crossing the aforementioned line between Land Lots 91 and 92, to a point on the aforementioned fence line, property line between Janie Sue Caudle, et al., and Odis T. Owens, and line between Land Lots 92 and 89; thence leaving the said west right-of-way line of the location and with the said fence line, the said property line, and the said land lot line S. 87° 22' 03" E., 152.67 feet, crossing the centerline of the location at survey station 282 + 32.3 (76.33 feet), to the point of beginning and continuing 8.78 acres, more or less.

Furthermore, the above-described easement rights are acquired with respect to such appurtenant right, title, and interest as the owner of the above-described land may have in Tract MLCP–28, the State of Georgia (SR 225/Spring Place Road), the adjoining road right-of-way shown on the above-mentioned maps (Attachment 2 to the Declaration of Taking).

Furthermore, the permanent easement rights include the perpetual right to in-

stall, maintain, and replace guy wires and necessary appurtenances outside the right-of-way for the transmission line structure located at survey station 265 + 89.23.

(*Id.* Attach. A.) The Notice of Declaration of Taking also attached a map showing the easement and right-of-way. (*Id.* Attach. B.)

On that same day, the Court entered an Order of Possession. (Docket Entry No. 4.) That Order directed that

> the Tennessee Valley Authority, as agent of the United States of America, be put into immediate possession of the property described in the Declaration of Taking filed in this action to the extent necessary to permit the Tennessee Valley Authority to carry on any of its operations described in the pleadings filed herein, and that the Defendants in such action surrender possession of the said property to the Tennessee Valley Authority accordingly.

(*Id.*)

On August 29, 2008, Defendants filed their Answer to the Complaint. (Docket Entry No. 9.) In their Answer and Notice of Appearance, Defendants assert a number of defenses. (*Id.*) Specifically, in their First Defense, Defendants contend that "Plaintiff's condemnation of Defendants' property has been done in bad faith as shown, among other things[,] in the materially false and misleading statements made by Plaintiff in its Environmental Assessment, dated August 2007, attached hereto as Exhibit 'A'." (*Id.* at 1–2.)

Defendants' Second Defense asserts that "Plaintiff's condemnation of Defendants' property is arbitrary and capricious in that the TVA refused to even consider placement of its transmission line in the most economical and efficient path adjacent to an existing transmission line corridor and justified its refusal on the basis of false representations." (*Id.*) Defendants' Third Defense asserts that "Plaintiff's actions taken in bad faith and in an arbitrary and capricious manner serve no valid public purpose and are therefore unconstitutional and unlawful." (*Id.*)

In their Fourth Defense, Defendants complain that "Plaintiff's condemnation of Defendants' property unlawfully and unconstitutionally confers a private benefit upon other citizens at the expense of the Defendants." (Docket Entry No. 9 at 2.) In their Fifth Defense, Defendants allege that Plaintiff failed to pay "just and adequate compensation for the taking of the property and rights of the Defendants." (*Id.*)

On October 27, 2008, Plaintiff filed a Motion for Judgment on the Pleadings With Respect to the Defendants' Defenses to the Taking ("Motion for Judgment on the Pleadings"). (Docket Entry No. 11.) Plaintiff has moved for judgment on the pleadings with respect to all of Defendants' defenses to the taking. (*Id.*) Defendants responded to the Motion, attaching materials outside the pleadings. (Docket Entry No. 12.) Plaintiff, in turn, filed a reply in support of the Motion, also attaching materials outside the pleadings. (Docket Entry No. 17.)

On November 12, 2008, the Court entered an Order informing the parties that it intended to treat the Motion for Judgment on the Pleadings as a summary judgment motion, because the parties both relied on materials outside the pleadings. (Order of Nov. 12, 2008.) The Court gave the parties ten days to submit any additional materials. (*Id.*)

On November 13, 2008, Defendants filed a Motion for Discovery Pursuant to Rule

56(f). (Docket Entry No. 21.) On November 17, 2008, the Court denied that Motion, and observed that the deadline for filing supplemental materials in connection with the Motion for Judgment on the Pleadings established by the November 12, 2008, Order remained the same. (Order of Nov. 17, 2008.)

The ten-day period established by the November 12, 2008, Order has expired. The Court therefore concludes that the instant Motion is ripe for resolution by the Court.

## B.  Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir.2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party). This statement does not represent actual findings of fact. In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir.2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

### 1.  Defendants' Evidence

Defendants contend that the easement and right-of-way to be taken impact a proposed New Echota historic district. In support of this contention, Defendants have attached a copy of a newspaper article. (Docket Entry No. 12–4.)

Defendants also have presented various letters reflecting concern about the loca-tion of the proposed transmission line. First, Defendants have presented a letter from David Gomez, the Site Manager for the New Echota State Historic Site, to Plaintiff. (Aff. of Jane Caudle Ex. 1.) That letter states, in relevant part:

> I have read with concern the above referenced project plans to construct a transmission power line through property adjacent to the New Echota–Cherokee Capital State Historic Site.

> The proposed corridor will, I believe, have a very negative affect [sic] on both the New Echota State Historic Site's historical integrity and that of the surrounding area, including the Trail of Tears Highway (Hwy 225) corridor, the New Echota Traditional Cultural Property (TC) and especially the adjacent Forks Ferry Centennial Farm property. The significance of protecting this important area cannot be overemphasized, both as a buffer for environmental reasons and for historical preservation reasons.

> The proposed zone includes the historic Cherokee Indian ferry-crossings used during the Trail of Tears period. Federal Highway Administration and Georgia Department of Transportation Context Sensitive Design engineering is currently being performed for Highway 225 Coosawattee River and New Town Creek bridge projects which will help protect and draw attention to the significance of this important area.

> The proposed corridor for this new transmission line will be detrimental to work being performed by the Georgia State Parks & Historic Sites Division of the Georgia Department of Natural Resources, the Gordon County Historic Preservation Commission's efforts to establish a New Echota Historic Preserva-

tion District, the Federal Highway Administration & Georgia Department of Transportation's Highway 225 project and the National Park Service's Trail of Tears National Historic Trail.

Please consider meeting with the concerned parties this project will negatively affect to discuss the possible establishment of an alternate corridor for this proposed transmission line.

(*Id.*)

Defendants also have presented a November 5, 2008, letter from Alvin N. Long, the Chairman of the Board of Commissioners of Gordon County, Georgia, to the Department of Natural Resources, National Parks Service, and Tennessee Valley Authority. (Caudle Aff. Ex. 2.) That letter provides, in relevant part:

TO WHOM IT MAY CONCERN:

At the November 4, 2008 Regular Meeting of the Gordon County Board of Commissioners there was a consensus of Board members to join a coalition of concerned community groups to support an urgent and necessary dialog [sic] between the Department of Natural Resources, National Parks Service, and the Tennessee Valley Authority in order to avoid imminent and irrevocable damage to historical, environmental, cultural and recreational resources in Gordon County.

The planned TVA transmission line corridor circles inexplicably the pending "New Echota Protected Resources Historic Overlay District" affecting an array of resources along its path.

The Board of Commissioners requests that all stakeholders sit together to discuss the wisdom of the current TVA route. We believe that both TVA and the larger community will be served by an open dialog [sic] and review of this decision.

(*Id.*)

Defendants also attached a November 6, 2008, letter from Ken Padgett, the chair of the Gordon County Historic Preservation Commission. (Caudle Aff. Ex. 3.) That letter states, in relevant part:

The Gordon County Historical Preservation Commission has learned that a possible route for a TVA transmission line threatens the historic character of a centennial family farm in Gordon County.

This farm is within a proposed historic district overlay planned to protect the historic watershed, archaeological resources, native vegetation, and watersheds adjacent to the New Echota Historic Site, an important Native American cultural property, the last capital of the Cherokee Nation before removal to the west.

We understand that a nearby existing and parallel transmission corridor is already deforested and is also a much more direct line to the Moss Lake substation it serves. It appears that using the existing cleared corridor would save TVA financial resources and preserve the historic character of New Echota and its surroundings.

The Gordon County Historic Preservation Commission urges the TVA to reconsider this decision and meet with the owners of Fork Ferry Farm, 1631 Chatsworth Highway 225 NE, Calhoun, Georgia, to work out a route for the transmission line that will not endanger the historically and esthetically valuable environs of our Native American homelands.

(*Id.*)

Finally, Defendants have presented a November 6, 2008, letter from Joe Cook,

the Executive Director and Riverkeeper of the Coosa River Basin Initiative, to Plaintiff. (Caudle Aff. Ex. 4.) That letter provides, in relevant part:

To Whom It May Concern:

I am writing on behalf of the Coosa River Basin Initiative's 3000 members, including some 150 members of our Calhoun chapter organization, New Echota Rivers Alliance, to express concerns about the Center Point–Moss Lake Transmission Line.

As the Upper Coosa Riverkeeper, we work to protect water resources throughout the 5,000–square mile Upper Coosa River Basin. This work involves not only protecting water quality in our rivers and streams, but also the recreational and historic resources of the region.

We are concerned that the proposed route will negatively affect several significant historic properties, namely the New Echota–Cherokee Capital State Historic Site & Traditional Cultural Property and the Fork Ferry Centennial Farm property. These properties are adjacent to the Coosawattee, Conasauga and Oostanaula rivers, including portions of these rivers where we regularly lead recreational paddle trips.

The addition of a large transmission line through this area could negatively impact the viewshed in the river corridor. We believe alternatives to the proposed route should be explored, especially given the Gordon County Commission's proposal to create a historic overlay district here.

We understand that a nearby existing and parallel transmission corridor is already deforested and is also a much more direct line to the Moss Lake sub-station it serves. We urge TVA to reconsider the proposed route and meet with stakeholders in the area to seek a transmission line corridor that would minimize impacts to historic and recreational resources in the area.

(*Id.*)

Finally, Defendants have presented an affidavit from Robert L. Harbour, a professional engineer. Mr. Harbour's affidavit states, in relevant part:

5.

The preferred route for an electric transmission line is through an existing corridor. In most cases, such a route minimizes any additional adverse environmental effect of the line. Such a route makes it possible to use a smaller easement and to use existing access roads thereby affecting less land.

6.

The preferred route for an electric transmission line is a straight line with a minimum of turns and corners. Straight routes are easier to build and maintain, less expensive and stronger.

7.

I have reviewed the Environmental Assessment concerning the Center Point–Moss Lake 230/115 kV Transmission Line (the "Transmission Line") and Moss Lake Substation, dated August 2007 (the "Environmental Assessment").

8.

Based on the discussion of the route selection process contained in the Environmental Assessment it seems clear that the straight route parallel to the

existing Conasauga–Bowen 500 kV line was not studied in detail.

### 9.

Although the utility describes the route parallel to the Conasauga–Bowen 500 kV line as "not viable" due to "environmental constraints and homes,["] without the benefit of a detailed study such a conclusion cannot be supported.

### 10.

Despite diligent search, I have located no publicly available wetlands maps indicating that the parallel route is not feasible.

### 11.

Based on the aerial photographs I have reviewed and ground measurements provided to me there are no homes so close to the parallel route that they would have to be relocated.

### 12.

Without a detailed study of the area parallel to the Conasauga–Bowen 500 kV line it is impossible to rule out a parallel route as the most practicable, efficient, and inexpensive transmission line route.

### 13.

Without a detailed study of the area parallel to the Conasauga–Bowen 500 kV line it is impossible for the TVA to determine that its transmission line route has been selected in accordance with accepted and preferred industry standards or that the land to be condemned in this action is necessary for its purposes.

(Aff. of Robert L. Harbour ¶¶ 5–13.)

### 2. Plaintiff's Evidence

Plaintiff, for its part, has presented an authorization to file condemnation actions signed by its President and Chief Executive Officer on April 14, 2008. (Decl. of Maureen H. Dunn Attach. 1.) That authorization states, in relevant part:

> The Tennessee Valley Authority (TVA) Board of Directors at its May 18, 2006, meeting delegated to TVA's Chief Executive Officer (CEO) the authority to authorize the filing of condemnation cases in the name of the United States of America pursuant to the TVA Act. This authorization to condemn property rights is made pursuant to that delegation.
>
> The following TVA transmission line project have been determined to be necessary to carry out the purposes of the TVA Act and have been approved and budgeted by TVA:
>
> Center Point–Moss Lake 115–kV/230–kV Transmission Line Project (project work order 44F34)
>
> . . .
>
> The acquisition of the aforesaid property interests in the name of the United States of America is deemed by TVA to be necessary for carrying out the provisions and purposes of the TVA Act. Accordingly, the General Counsel is hereby authorized to institute all proceedings necessary for the acquisition of said interests by condemnation.

(*Id.* at 1–2.)

## II. Discussion

Plaintiff argues that Defendants' various defenses to the taking fail as a matter of law. Defendants, however, contend that Plaintiff has not demonstrated that the taking in this case is necessary to carry out the purposes of the TVA Act, that the proposed taking will have a negative envi-

ronmental and historical impact, that the TVA did not consider a more practical alternative route for the transmission line, and that the TVA made its condemnation decision in bad faith.

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate, and may satisfy this burden by pointing to materials in the record. *Reese v. Herbert,* 527 F.3d 1253, 1269 (11th Cir.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Allen v. Bd. of Public Educ. for Bibb County,* 495 F.3d 1306, 1313 (11th Cir.2007). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Allen,* 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc.,* 496 F.3d at 1241. The Court also must " 'resolve all reasonable doubts about the facts in favor of the non-movant.' " *Rioux v. City of Atlanta, Ga.,* 520 F.3d 1269, 1274 (11th Cir.2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990)). Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the evidence presented. *Reese,* 527 F.3d at 1271; *Skop v. City of Atlanta, GA,* 485 F.3d 1130, 1140 (11th Cir.2007). Finally, the Court does not make factual determinations. *In re Celotex Corp.,* 487 F.3d at 1328.

### B. Discussion

#### 1. Public Use

■ Defendants apparently assert that the taking does not serve a public use. For the following reasons, that defense fails as a matter of law.

■ " 'The only question for judicial review in a condemnation proceeding is whether the purpose for which the property was taken is for a Congressionally authorized public use.' " *United States v. 0.95 Acres of Land,* 994 F.2d 696, 698 (9th Cir.1993) (quoting *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (1975)). Thus, as long as the taking is for an authorized public use, the Court has no jurisdiction to review the agency determination as to the parcels of land necessary to the project. *Id.*

The TVA Act: (1) expressly authorizes Plaintiff to condemn property that Plaintiff deems necessary for carrying out the purposes of the Act; (2) authorizes Plaintiff to take title to the property condemned in the name of the United States; and (3) entrusts all property condemned to Plaintiff, as the agent of the United States, to accomplish the purposes of the Act. 16 U.S.C.A. §§ 831c(h), 831c(i), 831x. The TVA Act specifically grants Plaintiff "the power to acquire real estate for the construction of transmission lines." *United States ex rel. Tenn. Valley Auth. v. An Easement & Right–of–Way Over 1.8 Acres of Land,* 682 F.Supp. 353, 356 (M.D.Tenn.

1988). The TVA Act thus grants Plaintiff the authority to condemn Defendants' property to carry out the purposes of the Act. *Id.*

■ The TVA Act "is to be liberally construed to carry out Congress' purposes." *An Easement & Right–of–Way Over 1.8 Acres of Land,* 682 F.Supp. at 356. "It is the function of Congress to decide what type of taking is for a public use, and [ ] the agency authorized to do the taking may do so to the full extent of its statutory authority." *Id.*

"It is for the administrative agencies vested with the power to acquire property by condemnation, and not for the courts, to decide what properties are needed to accomplish statutory or public purposes." *Ill. Cent. R. Co. v. Tenn. Valley Auth.,* 445 F.2d 308, 313 (6th Cir.1971). "A taking by condemnation is for a public purpose if 'Congress authorized the Authority to acquire, hold, and use the lands to carry out the purposes of the T.V.A. Act.'" *Id.* (quoting *United States ex rel. Tenn. Valley Auth. v. Welch,* 327 U.S. 546, 552, 66 S.Ct. 715, 90 L.Ed. 843 (1946)). "Once Congress has defined a public use, its decision is entitled to great deference." *An Easement & Right–of–Way Over 1.8 Acres of Land,* 682 F.Supp. at 356.

As previously discussed, the condemnation at issue falls within the scope of TVA's Congressionally-granted authority. Moreover, Plaintiff has submitted evidence demonstrating that the condemnation is to fulfill the purposes of the TVA Act. Consequently, the condemnation is for a public purpose.[1] Defendants' contention that the condemnation is not for a public purpose therefore fails as a matter of law.

### 2. Arbitrary and Capricious, Abuse of Discretion, and Bad Faith

■ In portions of their First, Second, and Third Defenses, Defendants contend that the taking is arbitrary and capricious. Defendants, however, cannot circumvent the non-reviewable nature of Plaintiff's decision concerning the necessity of the proposed taking by arguing that Plaintiff acted arbitrarily and capriciously in selecting the location for the proposed easement and right-of-way, or by contending that Plaintiff acted in bad faith or abused its discretion. *Road Easement,* 424 F.Supp. at 569 ("The allegation of the landowners that the officials authorized by the Congress to select the lands necessary to be taken for public use acted in bad faith and arbitrarily and capriciously in making the selection does not transmute the legislative question involved into a judicial question."); *see also An Easement & Right–of–Way Over 1.8 Acres of Land,* 682 F.Supp. at 359 ("When arbitrary and capricious conduct is cited to challenge the necessity and scope of the taking, the defense is inadequate as a matter of law."). Consequently, the portions of Defendants' First, Second, and Third Defenses that contend that the taking was arbitrary and capricious or in bad faith fail as a matter of law.

### 3. Private Benefit

In their Fourth Defense, Defendants assert that the taking confers a private benefit upon other citizens at Defendants' expense. As discussed *supra* Part II.B.1., the condemnation at issue, which is for the purpose of erecting and maintaining electric transmission lines, is within the scope of Plaintiff's authority under the TVA Act.

---

**1.** In any event, the record clearly demonstrates that Plaintiff's proposed taking is for a public use that falls within Plaintiff's powers under the TVA Act.

Consequently, the condemnation at issue clearly is for a public use, rather than to confer a private benefit. *See An Easement & Right–of–Way Over 1.8 Acres of Land,* 682 F.Supp. at 358 (finding condemnation of property for erection of electric transmission lines was for public purpose; fact that lines were "for service to a single industrial customer does not forestall a finding that the taking is for a public use"). Defendants' Fourth Defense therefore fails as a matter of law.

### 4. Alleged Failure to Take Most Economical and Efficient Path and No Reasonable or Prudent Location

■ In part of their Second Defense, Defendants contend that Plaintiff should have placed the transmission line in "the most economical and efficient path adjacent to an existing transmission line corridor." In their prayer for relief, Defendants request that the Court re-route the line "to a more reasonable and prudent location." Specifically, Defendants argue that Plaintiff should have located the line near an existing Georgia Power line.

The necessity of the taking or the location of the easements and rights-of-way, however, are not proper questions for the Court to review. *United States ex rel. Tenn. Valley Auth. v. Two Tracts of Land,* 456 F.2d 264, 267 (6th Cir.1972) ("The contention of the landowners that acquisition of their land is unnecessary is answered by the well-settled rule that the necessity, expediency, location and extent of taking property by eminent domain are legislative and administrative questions that ordinarily are not subject to judicial review."). Defendants' Second Defense consequently fails as a matter of law, to the extent that it contends that the line

should take the most economical and efficient path, or that the line should follow the existing Georgia Power line. Similarly, the Court cannot order that Plaintiff re-route the line, as requested by Defendants in their prayer for relief.

### 5. Contentions that the Environmental Assessment Contains False and Misleading Statements

■ In part of their First Defense, Defendants also contend that Plaintiff's environmental assessment for the transmission line project contains "materially false and misleading statements." Specifically, Defendants contend that the portions of the environmental assessment stating that Plaintiff did not consider an alternative route because the alternative route would impact existing homes and wetlands are false.

Although Defendants may question whether Plaintiff's environmental assessment complies with the National Environmental Policy Act ("NEPA"), Defendants may raise such a challenge only in a proper action filed under the Administrative Procedures Act. *Sierra Club v. Slater,* 120 F.3d 623, 631 (6th Cir.1997) (observing that "NEPA does not authorize a private right of action," but that Administrative Procedures Act "provides for judicial review of agency action"). Further, Defendants' challenge to Plaintiff's environmental assessment is not a defense to the taking. *See United States v. 0.95 Acres of Land,* 994 F.2d 696, 699 (9th Cir.1993) ("NEPA cannot be used as a defense to the condemnation action."); *United States v. 255.25 Acres of Land, More or Less,* 553 F.2d 571, 572 n. 2 (8th Cir.1977) (observing that landowners' complaint as to alleged failure to comply with NEPA and other environmental statutes was not properly

raised in condemnation action) (per curiam); *United States ex rel. Tenn. Valley Auth. v. Three Tracts of Land,* 377 F.Supp. 631, 638 (N.D.Ala.1974) ("The validity of the taking is the only matter before the Court and since the Court has determined that no statement was needed in order to take, it does not need to determine when the [NEPA] is triggered and an impact statement is required."). Consequently, this portion of Defendants' First Defense fails as a matter of law.

### 6. Definiteness Arguments

In their Sixth Defense, Defendants contend that the description of the taking is not adequate, constitutional, or lawful. The Court finds that the descriptions pro-

vided by Plaintiff satisfy the requirements of Federal Rule of Civil Procedure 71.1(d)(2)(A)(ii) [2] and 40 U.S.C.A. § 3114.[3] Defendants' Sixth Defense therefore fails as a matter of law.

### 7. Just and Adequate Compensation

█ Finally, Defendants argue in their Fifth Defense that Plaintiff has not paid just and adequate compensation for the easements and rights-of-way at issue. The issue of just and adequate compensation, however, is a matter to be resolved at trial, and is not a defense to the condemnation and taking. *United States ex rel. TVA v. 203 Acres of Land,* No. 4:97–CV–46, slip op. at 3–4 (W.D.Ky. July 11, 1997) (unpublished). Consequently, Defendants' Sixth Defense fails as a matter of law.

**2.** Federal Rule of Civil Procedure 71.1(d)(1) requires that a plaintiff in a condemnation action provide a notice to the defendant property owner. Fed.R.Civ.P. 71.1(d)(1). Rule 71.1(d)(2)(A) governs the contents of the notice, and provides:

(A) *Main Contents.* Each notice must name the court, the title of the action, and the defendant to whom it is directed. It must describe the property sufficiently to identify it, but need not describe any property other than that to be taken from the named defendant. The notice must also state:
(i) that the action is to condemn property;
(ii) the interest to be taken;
(iii) the authority for the taking;
(iv) the uses for which the property is to be taken;
(v) that the defendant may serve an answer on the plaintiff's attorney within 20 days after being served with the notice;
(vi) that the failure to so serve an answer constitutes consent to the taking and to the court's authority to proceed with the action and fix the compensation; and
(vii) that a defendant who does not serve an answer may file a notice of appearance.
(B) *Conclusion.* The notice must conclude with the name, telephone number, and e-mail address of the plaintiff's attorney

and an address within the district in which the action is brought where the attorney may be served.
Fed.R.Civ.P. 71.1(d)(2).

**3.** 40 U.S.C.A. § 3114 states, in relevant part:

In any proceeding in any court of the United States outside of the District of Columbia brought by and in the name of the United States and under the authority of the Federal Government to acquire land, or an easement or right of way in land, for public use, the petitioner may file, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the land described in the petition, declaring that the land is taken for the use of the Government. The declaration of taking shall contain or have annexed to it—
(1) a statement of the authority under which, and the public use for which, the land is taken;
(2) a description of the land taken that is sufficient to identify the land;
(3) a statement of the estate or interest in the land taken for public use;
(4) a plan showing the land taken; and
(5) a statement of the amount of money estimated by the acquiring authority to be just compensation for the land taken.
40 U.S.C.A. § 3114(a).

## 8. Summary

In sum, the Court finds that all of Defendants' defenses to the condemnation and taking fail as a matter of law. The Court therefore grants Plaintiff's Motion for Summary Judgment. The Court declines to stay a ruling on the Motion pending a detailed study of the alternative proposed route, or to stay construction activities by Plaintiff pending a ruling on the Motion.

## III. Conclusion

ACCORDINGLY, the Court **GRANTS** Plaintiff's Motion for Judgment on the Pleadings [11].